## WILLIAM H. LAIRD v. THOMAS B. SNYDER.

*Negligence—Over-driving, want of care, and improper treatment of a livery team—Evidence.*

1. In a suit for damages for the alleged negligence of defendant in over-driving, and for improper treatment, and want of care, of a span of horses let to him, the testimony tended to show that on the return of the team and buggy both were covered with frozen mud, of which large quantities had been thrown on the top of the buggy. In answer to the question, "if the horses were driven at an average gait, whether or not the mud would fly on the top of the carriage," plaintiff was allowed to answer, under objection that the proposed testimony was irrelevant and immaterial, that, "in ordinary going, mud won't fly on top of a carriage top."

   *Held,* that the testimony was relevant as tending to show the rate of speed at which the team had been driven.

2. The remaining questions passed upon are so intimately connected with the facts in the case, as detailed in the opinion, that to specify same would be to give a synopsis of the opinion, to which reference is had.

Error to St. Joseph. (Pealer, J.) Argued January 13 and 14, 1886. Decided January 27, 1886.

Case. Defendant brings error. Affirmed.

*David Knox* and *Dallas Boudeman*, for appellant:

The following questions asked plaintiff, called for conclusions, not facts, and defendant's objection should have been sustained:

1. "If the horses were driven at an average gait, state whether or not mud would fly on top of the carriage?"

2. "When the horses came, in what was their appearance, as to whether they were tired or not?"

3. "What effect did this drive have on the other horse? State whether it affected his wind?"

Witness was not asked to state how the horse looked; what his symptoms were on his return, or at any time afterwards, nor what change was observed in the horse after, as compared with before the drive, but the jury was left to accept the conclusion of the witness. These questions and answers were of a similar character as those in the following cases, which were held to be erroneous: *Braman v. Bingham*, 26 N. Y. 483; *Reagan v. Grim's Adms.* 13 Penn. St. 508; *Bryant v. Glidden*, 39 Me. 458; *McClay v. Hedge*, 18 Ia. 66; *Tomlin v. Hilyard*, 43 Ill. 300; *Teenpenning v. The Corn Exchange Ins. Co.* 43 N. Y. 279; *Hathaway v. Brown*, 22 Minn. 214; *Campbell v. State*, 10 Texas app. 560.

The witness, Grout, was not shown to be competent to give an opinion as to the value of the team. Whether he had driven it once or ten times, no one knew, or whether he was in a business which would render him competent to give an opinion, was not shown:[1] *Tower v. D. L. & L. M. R. R. Co.* 34 Mich. 328; *Dyer v. Rosenthal*, 45 Mich. 588.

---

[1] The witness Grout testified as follows:

"I reside in Three Rivers and was acquainted with this team, one of which died in November last. I had driven them and had known the horse that died about eight years, knew him before Laird got him. The team were good drivers. In my opinion the team was worth $300. I should consider the horse that died worth $200. On cross-examination he testified that he had known the horse that died eight years; that he

*Howell, Carr & Burnard,* for plaintiff:

It was competent for plaintiff, a man of experience with horses, to give his opinion, based upon such experience and the condition of the horses and buggy when defendant took them, and when they were returned, whether such altered condition would follow if horses were driven at an average gait.

It was competent to show the value of the horse when received and brought back, as tending to fix the damage sustained ; and value, is largely a matter of opinion, and the only way to show it is by the estimate of those who have had experience with that kind of property, and know the property in question : *Mathews v. Stewart,* 44 Mich. 217 ; *Enright v. Hartsig,* 46 Mich. 471 ; *Keables v. Christie,* 47 Mich. 596, and the measure of damage, in this case, was the value of the horse killed, and the difference in the value of the other horse on account of the injury sustained : *Davidson v. Mich. Central R. R. Co.* 49 Mich. 431.

SHERWOOD, J. The plaintiff is a livery-stable keeper, residing at Three Rivers.

On the twenty-third day of November, 1884, the defendant hired a team and buggy of the plaintiff to drive from Three Rivers to some point near Burr Oak and return. The defendant started out with the team about half-past 7 o'clock in the morning of the same day, taking in with him another person on the way, drove to Burr Oak, and after stopping there an hour and a half they continued on to a Mr. Beard's, which was about six miles southeast of Burr Oak, and returned to Three Rivers in the evening, about 10 o'clock, after having driven the horses about sixty or sixty-five miles. The weather was rainy, cold, and sleety, and the roads very muddy and heavy. The horses were taken from

---

had lived in Three Rivers three years and prior to that lived in Paw Paw, where the horse was owned, but from the time he left Paw Paw until Laird brought horse to Three Rivers, did not see or know anything about the horse. That he knew the other horse and had driven the two together; that he thought there was $100 difference in their value; that he considered the horse that died the best looking one and the best horse every way; that he was a nice driving horse, and the other a fair driving horse, but that the one he valued highest was the smoothest, prettiest horse, more showy of the two. He considered him a sound horse."

the wagon as soon as they returned to the stable at Three Rivers, and placed in the barn. One of them died almost immediately, and the other horse was found to be lame and nearly exhausted from fatigue from the drive; very soon lay down and was unable to get up for two days, and was unable to work for two or three weeks. He was found to be injured and wind-broken to the extent that he never recovered, and his value was greatly lessened. The evidence tended to show, upon the trial, that the horses, when taken by the defendant, were worth about $400, and both well and hearty; that the horse that died was worth $225, and the other about $175; that the injury to the latter was half his value.

The plaintiff brought his action against the defendant to recover for the value of the horse that died, and for the injury done to the other, basing his claim therefor upon the negligence of the defendant in overdriving the team, and upon the improper treatment and care given them while in his possession.

The cause was tried in the St. Joseph circuit, before a jury. The plaintiff recovered a judgment for $226.16 damages.

Defendant brings error. Twelve errors are assigned, of which six relate to the rulings on admitting the testimony.

When the team came home, the wagon and team both, the testimony tended to show, were nearly covered with frozen mud; that large quantities were thrown upon the top of the buggy. Counsel for plaintiff asked witness Laird:

"If the horses were driven at an average gait, state whether or not the mud would fly on the top of the carriage."

This was objected to as irrelevant and immaterial, and the court allowed the witness to answer:

"In ordinary going mud won't fly on top of a carriage top."

The witness was the plaintiff. He appears to have been competent to speak upon the subject, and the testimony was relevant. It tended to show the rate of speed at which the

team had been driven. No error was committed in this ruling.

In giving testimony in regard to the condition of the horse which died the plaintiff was asked by his counsel:

"What effect did this drive have on the other horse?" "State if it affected the wind of the other horse."

Both these questions were objected to upon the ground that they called for the conclusion of the witness. To the first question the witness answered:

"The horse was lame. He would not stand upon his feet for a couple of days; laid down all the time. We could not get him up."

To the other, witness answered:

"Yes, it did. If you drive him a little fast he kind of foams and pants, and he never did it before."

We do not think the defendant's case was prejudiced by this testimony. The questions might be regarded a technical infringement of the rule, but for the witness's experience with, and previous knowledge of the horses, and their peculiarities and condition; under the circumstances, as they appeared in this case, we are not prepared to say the questions were objectionable. Neither do we think the jury could have considered them as calling for anything more than facts the plaintiff had observed, not as an expert, but from his previous care, use, and management of the horses. Evidently the witness so understood them, and in his answers thereto gave the facts upon which his conclusions were based, so that if they were wrong the jury could correct them.

The following question was also asked of plaintiff, when upon the stand, upon the subject of damages:

"What was the difference between the value of the horse on the morning that the defendant took him, and his value when he brought him back that night?"

This was also objected to upon the same ground, and the witness was allowed to answer:

"One-half his value, anyway, if not more."

We think, upon this question, the witness was fully quali-

fied to speak, as the testimony stood, and there was no error in allowing him to answer. Neither was there any error in allowing witness, Grout, to give his judgment as to the value of the team upon the subject of damages.

We have examined the record carefully, and find that so much of defendant's requests as was necessary to be given, was included in the charge of the court, and we find no error in that part of the charge given upon the court's own motion.

The judgment must be affirmed.

CAMPBELL, C. J., concurred ; MORSE, J., concurred in the result ; CHAMPLIN, J., did not sit.