CHAPIN AND IRISH V. THE CHICAGO, MILWAUKEE AND
ST. PAUL RAILWAY COMPANY

1. **Evidence:** PAROL TO CONTRADICT BILL OF LADING. A bill of
lading is both a receipt and a contract (*Garden Grove Bank v.
Railway Co.*, 67 Iowa, 526), and as a receipt it may be contra-
dicted by parol as to the number of articles received, and espe-
cially where it states the number as so many "more or less."

2. **Instructions:** COMPREHENSIVENESS OF. It is not the office of a
single instruction to embrace all the elements of defense, espe-
cially where the case is complicated, as indicated by the fact that
the defendant has asked the court to give nineteen instructions on
its behalf. It is sufficient if all the points in the case are fairly
presented in the whole charge taken together.

3. ———: TOO FAVORABLE TO APPELLANT. Though an instruction is
erroneous, it is no ground for reversal if the error is in favor of
the appellant.

*Appeal from Woodbury District Court.*—HON. GEORGE
W. WAKEFIELD, Judge.

FILED, FEBRUARY 11, 1890.

ACTION to recover for the loss of nineteen head of
cattle while in transit over defendant's line of road.
Judgment was entered for plaintiffs, from which the
defendant appeals.

*O. J. Taylor* and *Marks & Mould*, for appellant.

*Craig L. Wright* and *Joy, Hudson & Joy*, for
appellees.

GRANGER, J.—I. The issues of the case involved
a question of how many cattle were lost, the dispute
being whether the number was thirteen or
nineteen. Plaintiffs sought to show by
parol how many cattle were delivered to
the defendant for transportation, and, over the defend-
ant's objection, were allowed so to do, fixing the number

*1. EVIDENCE: parol to contradict bill of lading.*

at one hundred and seventy-four, while the bills of lading issued by the defendant showed but one hundred and sixty-seven, "more or less." Defendant urges that parol evidence is inadmissible to contradict the bill of lading. It is a well-known rule that receipts are an exception to the general rule as to the admissibility of parol evidence to contradict or change. In *Garden Grove Bank v. Railway Co.*, 67 Iowa, 526, it is held that a bill of lading is both a receipt and a contract, and the particular in which the testimony in this case sought to contradict or vary the bill of lading was as to the number of cattle received, and the offer was within the rule recognized. Again, it is doubtful if the testimony was a contradiction, as the bill of lading only specified the numbers "more or less," which expression indicates an uncertainty as to the number. It was proper to show by parol the number of cattle actually shipped.

II. While the cattle were in transit the train was overtaken by a violent snowstorm, at Whittemore, Iowa. The train had proceeded about two and a half miles west of Whittemore, where it was stopped by drifts, and then backed to the station, and the cattle unloaded by the trainmen, and put in a yard, from which the missing ones escaped, and died on the prairie. The court, in its third instruction, explained to the jury that the defendant would not be liable for any loss which resulted from an act of God. The instruction undertakes quite minutely to explain what would constitute an act of God; the liabilities of common carriers in general; and their duties in cases where an act of God is relied upon as a defense against loss of property while in their custody. The criticism against the instruction is very indefinite, so much so that we hardly know how to treat it; and, while saying this, we think it about as definite as the instruction will admit of. The instruction may, as urged, contain some unnecessary statements, and few instructions are not vulnerable to such a

2. INSTRUCTIONS: comprehensiveness of.

claim. While the argument says the instruction "contains much that does not apply to the case," it urges that "the rights of the defendants are not sufficiently set forth;" that "it does not contain all the elements involved in the defense, which were asked by defendant's instructions." It is true the instruction does not contain, nor is it the office of a single instruction to embrace, so much. The instructions asked by the defendant are no less than nineteen, and upon a variety of subjects, and, if proper to be given, should be expressed in separate instructions. The instruction is lengthy, and we do not set it out, but we think it a fair expression of the law designed to be covered by it, as applicable to the case.

III. The fourth instruction is made the basis of an assignment, and is as follows: "Par. 4. If you find

THE SAME.

from the evidence the shipment of the stock as alleged in the petition, and the train in which said stock was transported, by reason of a storm and extreme cold, was unable to proceed beyond Whittemore; and that the defendant, by its agent and servants, unloaded said cattle at Whittemore, without the consent of plaintiffs, and placed them in yards insufficient in strength or size to ordinarily prevent cattle from escaping therefrom; and that they escaped therefrom without any fault or negligence on the part of the plaintiffs; and that in placing said stock in such insufficient yards the defendant did not exercise reasonable care and prudence; and that any of the stock so escaping were lost and perished without any negligence on the part of the plaintiffs contributing thereto,—then you will find for the plaintiffs; but if you find from the evidence that the cattle were then in charge of one of plaintiffs, and were unloaded at Whittemore at his request, to be sheltered and fed, and he took charge of the same, and placed them in the yards, from which they escaped and perished in the storm, then the defendant would not be liable. If you should find that defendant was requested to place cars of cattle next the coal

sheds, and defendant failed to comply with the request, such failure would not, as a matter of law, be negligence. You will determine whether defendant was negligent in its care of the cattle, from all the facts and circumstances in evidence."

It must be conceded that in so far as the instruction attempts to express the law it is correct. The criticism upon it is: "It is open to much the same objections as the third one; it does not set forth all the elements of defense." The argument then proceeds upon that theory, and says: "It takes no account of any duty or obligation on the part of the plaintiffs towards the care of the cattle, unless he had in fact taken exclusive charge of them; and leaves the inference that the plaintiffs could, by refusing to consent to any act of defendant in trying to preserve the cattle, and, though present, refraining from exercising exclusive control over them when unloaded, cast the entire burden and responsibility as to their preservation on the defendant; and, in that part of it as to the claimed request as to placing cars next the coal sheds, it simply says such failure so to place them would not, as a matter of law, be negligence." Looking to other instructions given, the grounds of complaint are covered in every essential particular. The liability of the defendant is placed clearly on its negligence in placing the cattle in an insecure place, and the jury are expressly told that, if the loss did not occur in consequence of such negligence, the defendant is not liable.

It is urged that no rule is given in this instruction "as to loss by the act of God." That is true, but the rule is given in the third instruction. As illustrating the complaints generally as to the instructions, it is said this instruction gives no rule as to the burden of proof. But the following, as taken from other instructions on the burden of proof in the case, are given: "Par. 3. Such are the issues made by the parties by the pleadings herein, and you are instructed that the burden is upon the plaintiffs, in order to entitle them to recover, to

prove to you by a preponderance of the evidence all the material allegations of their petition which have not been admitted in defendant's answer, and substantially as set forth in the first paragraph of this charge." The answer admitted the receipt of the cattle, except as to the number admitted; their transportation; and set up facts as to their being lost in the storm. In fact, to a *prima-facie* right to recover, it was only necessary for the plaintiffs to show the number of the cattle lost, and their value. With the loss established by the defendant as a common carrier, the burden shifted to it to justify the loss. *McCoy v. Railway Co.*, 44 Iowa, 424.

Then, as to the burden shifting to the defendant, the court in the same instruction, after elaborating the law as to the liability of the defendant, said as follows: "Ordinary care depends on the circumstances of each particular case, and is such care as a person of ordinary prudence and skill would usually exercise under like or similar circumstances, and the failure to exercise such care is negligence. So in this case, if you find from the evidence the shipment of the stock in question, the payment of the freight thereon, and the failure to deliver all thereof, as alleged in plaintiffs' petition, and set out in the first paragraph of this charge, then the plaintiffs will have made out a *prima-facie* case to entitle them to recover in this action, and the burden will be upon the defendant to prove that that care and skill on their part would not have prevented the loss or injury; or that the stock, if any, was lost through the intervention of the act of God, or by reason of the viciousness or unruliness or fault of the stock while being transported, or that the plaintiffs were in charge thereof in transportation, and failed to exercise reasonable care over same, which resulted in the loss of the cattle; and, if either of these have been shown, then the burden of proof is shifted to plaintiffs to show affirmatively, by their evidence, that negligence on the part of the defendant contributed to or concurred with the act of God, or

3. ——: too favorable to appellant.

with the disposition of the stock, and produced the injury or loss complained of." Without approving the entire instruction, we say that if there is error it is in favor of the defendant, and of which it should not complain.

IV. The defendant asked some nineteen different instructions, some of which are entirely inapplicable to the real issue being tried, and many are a restatement of those given by the court, in different language and form, the giving of which would have been no more advantageous to the defendant than those given. To set out the instructions asked, and comment upon the action of the court in refusing them, would serve no good purpose. We unite in saying that the case was fairly submitted by the instructions given. The testimony fully sustains the verdict. AFFIRMED.