## GILBERT BROTHERS v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Carriers of freight:** BREACH OF CONTRACT: TORT: PLEADINGS: PROOF.

1 An action for injury to livestock while in transit may be based upon tort, or upon contract, and if purely a tort action is alleged the party is confined in his proof to that specific breach of duty; but if a contract for shipment and its-breach are alleged, even though enough is stated in addition to justify recovery for violation of a specific duty, still he is not held to proof of the particular wrong but may show any breach of the contract for safe transportation; and proof that the stock was delivered to the carrier in good condition and that it was in bad condition when it reached its destination, not apparently due to unavoidable circumstances, will establish a *prima facie* case of breach of contract and authorize recovery, irrespective of the allegations of tort.

**Same:** LIVESTOCK: LIABILITY FOR INJURY: RULES OF EVIDENCE. A 2 carrier is liable for loss or injury to freight during its transportation, not due to the act of God or the public enemy, its inherent nature or the act of the shipper, and as to these exceptions he may be liable for negligence; and whether the shipment be goods or livestock practically the same rules of evidence and of the burden of proof obtain. And where the loss is not due to the excepted cases, whether the action be for breach of contract for safe carriage, or for breach of a public duty to do the same thing, the carrier can not escape liability by proof of reasonable care.

**Same:** ACTION FOR NEGLIGENCE: PROOF. Proof that livestock was 3 delivered to a carrier in good condition and that it was in bad condition when it reached its destination will support an action for its injury while in transit, based solely on allegations of negligence; and where such facts are alleged proof of the same makes a *prima facie* case of negligence, which is not obviated by a further allegation that at some particular point on the route defendant was guilty of some specific act of negligence; as the same was not essential to plaintiff's case, but was covered and included in the allegations and proof of good condition on receipt by the carrier and bad condition at destination.

**Evidence:**   MARKET VALUE.   It is not reversible error to permit a qualified witness to state the difference in value of cattle in the condition in which they were delivered at destination and what their value would have been if delivered in good condition, as such difference in value is a mere matter of computation.

**Same:**   BEST EVIDENCE.   Where the record of the weight of cattle was not admissible in evidence and there was no proof of its correctness, the testimony of a competent witness of the gain they had made from the date of purchase to the date of sale was admissible, over the objection that it was not the best evidence.

*Appeal   from   Jefferson   District   Court.*—HON.   D.   M.   ANDERSON, JUDGE.

TUESDAY, JUNE 25, 1912.

ACTION for damages to cattle shipped over defendant's line of railway resulted in a judgment for plaintiff. The defendant appeals.—*Affirmed.*

*J. L. Parrish* and *J. H. Johnson,* and *Leggett & Mc-Henry,* for appellant.

*Crail & Crail,* for appellees.

LADD, J.—On September 22, 1908, plaintiffs purchased thirty-three year-old steers at the Union Stockyards at Chicago, Ill. and shipped them over defendant's railroad to Perlee, Iowa, where they arrived the next day.

Damages thereto are sought to be recovered in this action, the petition alleging that on the day named plaintiffs and defendant entered into a written agreement wherein defendant for a valuable consideration undertook as a common carrier to transport the cattle as above stated, said contract being made in the name of Lee Live Stock Commission Company as consignor on behalf of plaintiff, and made a part of the petition; and further:

That the plaintiffs performed all the conditions and obligations of said contract to be performed by them and delivered said cattle to the said defendant company for shipment on or about the 22d day of September aforesaid in good order and condition; that the car containing said cattle was attached by the defendant to one of its trains and started for its destination, Perlee, Iowa; that at a station along its line, to wit, Blue Island, Ill., the defendant carelessly and negligently, and in violation of its obligations as a common carrier, switched back a train of cars against the car containing plaintiff's said steers with great force and violence, throwing a number of said steers off their feet and down, so that the other steers tramped on them, and that all of said cattle were severely bruised and injured by the severe jolt received from the collision of the train of cars against the car in which they were contained, so that they were delivered to the plaintiffs at Perlee in a bruised, injured, cut, skinned, and battered condition, two of the steers having broken legs, one having its foot severely cut, and one with a knot or bunch on its leg, and all being more or less cut, skinned or bruised and some severely injured; that plaintiffs were damaged thereby in the sum of $200; that the injuries to plaintiffs' said cattle were caused solely and wholly by reason of the carelessness and negligence of the defendant, and without any negligence on their part contributing thereto.

All of this was denied in the answer. Evidence tending to show that the steers were delivered in good condition at the stock yards and were bruised and severely injured when they reached Perlee was adduced. Other than this, there was no evidence tending to show that the stock was injured at Blue Island, and, over objection that it was not relevant to the issues, evidence that the car was not bedded was received.

Appellant contends that this evidence was insufficient to make out a *prima facie* case, and that the court erred in receiving the evidence concerning the condition of the car; the theory of counsel's argument being that, as the petition specifically alleged negligence in handling the car

at Blue Island, there was no other issue to be determined. This thought is further expressed in the criticism of the sixth instruction, which informed the jurors that:

Common carriers are insurers of the safe transportation and delivery of live stock intrusted to them, except for a loss or injury occasioned by the act of God, the public enemy, or resulting from the disposition or natural propensities of the live stock transported; hence in this case you are informed that the defendant company was an insurer of the safe transportation and delivery of the thirty head of steers delivered by the plaintiffs to them at the Union Stockyards at Chicago, Ill., on the 22d day of September, 1908, and, if you find that said steers or any of them were injured during the transportation thereof to Perlee, Iowa, then the defendant company would be liable in damages for such injury, unless it shall establish by the preponderance or greater weight of the evidence in the case that such injury resulted and was occasioned by the act of God, the public enemy, or the disposition and natural propensity of the animal or animals injured, or by the acts of plaintiffs themselves.

The proposition is not that the evidence excepted to might not have been admissible and the instruction correct under a different pleading, but that the petition had narrowed the issue to a single ground; i. e., injury of the cattle by the rough handling of the car at Blue Island. The defect in this proposition is that it overlooks the distinction as does appellant's argument between this class of cases involving the liability of a common carrier in the transportation of property and those bottomed primarily on want of care. In the latter the rule prevails that the injured party having selected his ground for recovery must stand or fall thereon, as appears from *Volquardsen v. Telephone Co.*, 148 Iowa, 77, and other like decisions. But actions against a common carrier for injury or loss of property during transportation are not primarily founded on the negligence of the carrier. Thus it has been held that a

1. CARRIERS OF FREIGHT: breach of contract: tort: pleadings: proof.

petition reciting that property when delivered to a common carrier was in good condition and when received by the shipper at its destination in bad condition, without specific allegations of negligence, and, in the absence of any more definite general allegation of negligence, stated a cause of action. *Swiney v. Express Company,* 144 Iowa, 342; *McFadden v. Ry.,* 92 Mo. 343 (4 S. W. 689, 1 Am. St. Rep. 721). As said, an action for damages in the carriage of live stock is not necessarily bottomed on tort. Recovery may be had on a breach of contract. The petition specifically alleged that the shipment was under contract, a copy of which was made a part of the pleading, and a breach thereof as indicated. Anciently it seems to have been thought the liability of a common carrier rested solely on a breach of duty owing by him to the public, but later the shipper was allowed to declare in assumpsit on the breach of an undertaking to carry and deliver safely. "In all actions formerly against carriers, and up until a very late time, it was usual to begin the declaration with an averment of the custom. . . . Declarations against carriers in tort are as old as the law, and continued until *Dale v. Hall,* 1 Wils. 281, when the practice of declaring in assumpsit succeeded; but this practice does not supersede the other." *Ansell v. Waterhouse,* 2 Chit. Rep. 1; 18 E. C. L. 227.

From the earilest period in the common-law practice, an action on the case, based on a breach of the carrier's duty to the public, might be maintained to recover for such loss or injury. Furthermore it is believed this was the only form of action which would lie prior to the year 1750; and the reason for this was that, under the strict principles of the common law, common carriers were considered the agents and servants of the public, and were bound to a measure of duty to the public entirely distinct from that arising on contract. . . . In 1750 the first departure from the long established practice of declaring in tort occurred. Goods delivered to a common carrier were injured

in transportation, and the plaintiff, instead of declaring in tort on the custom of the realm, declared in assumpsit on the undertaking to carry and deliver safely, and alleged as a breach of the undertaking that the goods were damaged by defendant's negligence. . . . The most exhaustive research of the authorities will show that the precedent for allowing actions of assumpsit in this class of cases has seldom or never been disapproved; and it is now a well-established rule that at common law the party injured may at his option bring assumpsit, counting on the nonperformance of the agreement which the carrier made with him, or he may bring case, and count upon the violation of the public duty which the defendant avers. . . . Finally, in declaring in case, so much exactness in pleading is not required as in an action of assumpsit. In declaring on a contract, plaintiff must prove it as he has laid it, but in declaring on a tort it is not necessary to prove his whole case. Though he fails in many of his particulars, yet, if he proves so much of it as leaves him a good cause of action, he will be entitled to recover. (3 Cyc. P. & P. 817 et seq.) In determining whether to bring action on the case or in assumpsit it was important under the strict rules of common-law procedure to bear in mind some distinctions between these forms of action. But the difference in form of allegation in the declarations on the case and in assumpsit is very slight, there being in each instance an allegation that defendant 'undertook and agreed,' the characteristic difference being that in the action on contract it is alleged that he did so upon consideration, while in the action in tort no such allegation is necessary. (6 Cyc. 513.)

It is manifest from these excerpts, all of which are well sustained by authority, that a shipper in a case like this may base his action on tort or on contract, and enough of the petition has been recited to indicate that the allegations therein are broad enough to include both. In other words, a complete cause of action *ex contractu* is stated, and, in addition thereto, enough to justify recovery because of breach of duty as a common carrier. In this state all forms of action have been abolished (sections 3425, 3557, Code),

and a party is required to prove no more than essential to entitle him to the relief sought. See sec. 3639, Code. It was only necessary then, in order to make out a *prima facie* case, to prove a breach of the contract to safely transport the stock, and this was accomplished by establishing that they were in good condition when delivered to the company at Chicago, and received by the shipper at Perlee in bad condition not apparently due to natural vices.

The rules concerning proof in the transportation of live stock are not materially different from those for the transportation of goods. This is pointed out in 6 Cyc. at page 376:

> The general rule as to the common carrier liability with reference to the goods in his possession as a carrier, and regardless of any contractual exceptions, is that he is liable for all loss or destruction or of injury to such goods, not occasioned by the act of God or the public enemy. Therefore, where the loss is not due to the excepted cases, proof of negligence is immaterial, and the carrier can not escape liability by proving reasonable care and diligence. In the English cases, by which the rule of exceptional liability was first established, it was said that the carrier was an insurer of the goods as against all loss or injury not resulting from the excepted cases, and in some of the cases in the United States the term 'insurer' is used; but nothing more is meant by this expression than that the carrier is absolutely liable, with only the exceptions recognized in the rule as above stated. The general rule as to the carrier's liability is illustrated by cases holding the carrier liable for loss of goods by fire, water, or other accidental cause, or by negligence or wrong of the carrier's servants or third persons. However, in the fuller development of the rule of carrier's liability it has been held that he is not liable for loss or damage due to the intrinsic qualities of the goods carried or the act or fault of the shipper, and therefore the rule might now be more fully stated as being that the common carrier is liable for all loss or injury not due to the act of God or the public enemy, the inherent nature or qualities of the goods,

2. SAME: livestock: liability for injury; rules of evidence.

or the act or fault of the owner or shipper; it being understood that as to all of these excepted cases the carrier may be liable by reason of his own negligence or that of his agents, servants, or employees.

The law as thus stated is fully sustained by the decision cited, and this additional is found at page 381:

Where the destruction of or injury to the goods is due to their inherent nature and qualities, or defects therein, the carrier is not liable if his own negligence did not occasion or contribute to the injury. And perhaps it may be stated as a general proposition that the carrier is not liable for loss happening from the operation of natural causes. . . . . In general, as already stated, a common carrier of live stock is subject to the same rule of liability as a common carrier of other goods or property, but, if there is loss or injury due to the peculiar nature and propensities of the animals, then under the principle stated in the preceding paragraph, the carrier is excused, unless the loss or injury could have been prevented by the exercise of reasonable foresight, vigilance, and care on the part of the carrier.

In the same volume at page 519, the learned author says further:

The rules relating to the burden of proof in case of transportation of live stock are in principle the same as those with reference to goods, but some particular questions arise in their application. Thus, inasmuch as the carrier is not liable for death of animals during transportation due to natural causes, or their inherent vice or natural disposition, mere proof that the animals died after delivery to the carrier and before the end of the transpotation is not sufficient to establish liability, but the evidence must further show that the loss was due to human agency. But, if the loss or bad condition appears to have been due to human agency, then the carrier must show that it did not result from his negligence in order to escape liability on the ground that it was due only to delay or from causes within the common-law exemption or within a valid particular limitation. But this he may do by general evidence of care and diligence in the transportation.

(And at page 513): In many jurisdictions, it is said that the carrier relying upon an exception made by common law or contract must not only show that the loss or injury falls within exception, but also that it occurred without fault—that is negligence—on the part of the carrier; and it is especially so held with reference to a loss by fire, where that is a liability excepted in the contract. But the better rule, and one which seems to be supported by the preponderance of authority, is that, where the carrier shows the loss to be within an excepted cause either at common law or under a valid contract exemption, he is not bound to go further and explain the particular of. the loss or injury for the purpose of showing that he was free from negligence in connection therewith, but that the burden of proving negligence such as will render the carrier liable notwithstanding the common-law or contract exception is on the plaintiff. This rule would seem to be especially applicable where the contract is that the carrier shall not be liable except in case of negligence, or that the shipment is at the owner's risk, or that the carrier shall not be liable for damages due to delay.

The authorities cited fully sustain the author, and we may add an extract from 3 Elliott on Evidence, section 1919:

It is said that the rules relating to the burden of proof in case of transportation of live stock are in principle the same as those with reference to goods, but some particular questions arise in their application. Thus inasmuch as the carrier is not liable for death of animals during transportation due to natural causes, or to their inherent vice or natural disposition, mere proof that the animals died after delivery to the carrier and before the end of the transportation is not sufficient to establish liability, but the evidence must further show that the loss was due to human agency. But, if the loss or bad condition appears to have been due to human agency, then the carrier must show that it did not result from his negligence in order to escape liability on the ground that it was due only to delay or from causes within the common-law exemption or within a valid particular limitation. But this he may do by general evidence of care and diligence in the trans-

portation. There is some conflict among the authorities as to the burden of proof in cases of loss or injury to live stock; but the prevailing rule, where the owner or his agent does not go with the stock, is that when the animals are shown to have been delivered to the carrier in good condition, and to have been lost or injured on the way, the burden of proof rests upon the carrier to show that the loss or injury was not caused by his own negligence.

In addition to authorities from other states the learned author cites *McCoy v. Railroad,* 44 Iowa, 424, and *Chapin v. Railroad,* 79 Iowa, 582. In the *Chapin* case this court said:

As illustrating the complaints generally as to the instructions, it is said this instruction gives no rules as to the burden of proof. But the following, as taken from other instructions on the burden of proof in the case are given: 'Par. 3. Such are the issues made by the parties by the pleadings herein, and you are instructed that the burden is upon the plaintiffs, in order to entitle them to recover, to prove to you by a preponderance of the evidence all the material allegations of their petition which have not been admitted in defendant's answer, and substantially as set forth in the first paragraph of this charge.' The answer admitted the receipt of the cattle, except as to number admitted, their transportation, and set forth the facts as to their being lost in a storm, in fact, a *prima facie* right to recover, and it was only necessary for plaintiffs to show the number of cattle lost and their value. With the loss established by defendant as a common carrier, the burden shifted to it to justify the loss. *McCoy v. Railway,* 44 Iowa, 424.

Other decisions of this court are to the same effect, notably *Swiney v. Express Co.,* 144 Iowa, 342, and *Mosteller v. Railway,* 153 Iowa, 390, in the first of which the pleading required and in the last the extent of proof exacted are somewhat fully discussed. Enough has been quoted and said to indicate that whether the action is for breach of contract to safely carry, or is based on breach of a public

duty to do the same thing, the presumptions arising from proof are the same as are also the rules with reference to the burden of proof. Indeed, little seems to remain of the distinction between actions *ex delicto* and *ex contractu* against common carriers. The issue of care exercised by the carrier arises only when the case is sought to be brought within some of the excepted perils. Plainly enough the proof was sufficient to make out a breach of the contract to safely carry, and as no more was essential to entitle the plaintiff to the relief asked, it is manifest that there was no error in the instruction given nor in receiving evidence of the conditions in which carried. In other words, the allegation of negligence may be treated as surplusage. This was done in *Sargent v. Birchard & Page,* 43 Vt. 573, where the court said:

It is not unusual to insert in a declaration averments which affect only the rule of care and negligence which should govern the case. Thus, declarations alleging the defendants to be common carriers and at the same time averring gross negligence on their part in the transportation of the goods are usual and well approved. In such cases a failure to prove the allegation of negligence is no variance, and the plaintiff may recover without such proof, provided the evidence shows a case under the general rule respecting the liability of carriers. On the other hand, if the plaintiff does prove the allegation of negligence, he may recover, even though there are circumstances limiting the responsibility of the carrier below the common-law rule. So, in this case, if the deed affects the rule of care, the declaration is aptly framed to give the plaintiff the benefit of it. So far as the sufficiency of the declaration is concerned, it is unnecessary to decide whether the deed has any effect upon the rule of care or not, because, if it does, the averments in respect to it are material, and if it does not, they are immaterial and to be rejected as surplusage and in either view the declaration would be sufficient.

The same view was expressed in *School Dist. v. Railway,* 102 Mass. 552 (3 Am. Rep. 502), where the authorities were reviewed.

The instructions criticised may be approved if the
action be regarded as based on allegations of negligence
alone.   In such a case, as appears from *McCoy v. Rail-
way,* 44 Iowa, 424; *Chapin v. Railway,* 79
Iowa, 582, and other like decisions, as well as
the recent case of *Mosteller v. Railway,*
153 Iowa, 390, all necessary to justify an infer-
ence of negligence was proof that the cattle were delivered
to defendant in good condition, and when received by the
shipper at their destination were in bad condition, not
apparently due to inherent vices.   "This is on the theory,"
as said in *Mosteller's* case, "that, as the stock, having been
delivered in good condition is presumed so to continue until
the contrary appears (*Powers v. Ry.,* 130 Iowa, 615), and
if in bad condition, upon reaching its destination, this,
as it has been in the exclusive control of the
carrier, is presumed to have resulted from some
negligence on its part.   In other words, from a show-
ing of having been delivered to the carrier in good condi-
tion and received by the shipper at its destination in bad
condition, the inference arises that the company has been
negligent in the performance of its duties as a common
carrier in the transportation of the stock."

3. SAME: action
   for negli-
   gence: proof.

Allegations of these facts contained in the petition as
seen were held in *Swiney v. Express Co., supra,* sufficient
to charge negligence to the carrier, and, as no more need
have been proven to entitle plaintiffs to the relief prayed,
the court rightly ruled in submitting the cause to the jury,
even though the action be deemed one sounding in tort.
This conclusion is not obviated by the allegations with
reference to the rough handling of the car at Blue Island.
Section 3614 of the Code declares that place need only
be alleged when it forms a part of the substance of the issue.
Here the reference to a particular place was not essential,
the allegations being sufficient to admit the same proof had
this been omitted, and covering the entire line from Chicago

to Perlee. The presumption of negligence arising from the evidence adduced was as applicable to the car at Blue Island as at any other point along the road. In other words, plaintiffs' proof of injury to the stock while in defendant's exclusive possession covered all points, Blue Island as well as every other place along defendant's road, and a court would not be justified in saying that there was no proof of negligence at the particular point charged by plaintiffs, even if the action were solely bottomed on negligence.

Our conclusion, then, is that the district court did not err in submitting the case to the jury on the theory that plaintiff had made out a *prima facie* case against defendant, and that, though the evidence concerning the condition of the car might have been deferred until defendant had undertaken to meet such *prima facie* case by showing circumstances which might relieve it from liability, it was not error to receive it as a part of the evidence in chief.

II. One of the plaintiffs, John Gilbert as witness, after testifying that his business was handling stock, was asked, "What was the difference in the actual or market value of these cattle in the condition in 
4. EVIDENCE: market value. which they were received there at Perlee, when you first saw them, and what their value would have been if they had been delivered in good condition?" An objection that this called for an opinion as to the very issue the jury were to decide was overruled. Probably the better practice is to elicit an estimate of the market value before and immediately after injury, allowing the jury to ascertain the difference. But, where the difference between such values is simply a matter of easy computation, it is not reversible error to permit the witness to state such difference instead. *Parrott v. Railway,* 127 Iowa, 419; *Missouri Pacific Ry. Co. v. Harmonson* (Tex. App.) 16 S. W. 539; *Laird v. Snyder,* 59 Mich. 404 (26 N. W. 654, 17 Cyc. 53).

III. Another of plaintiffs, Samuel Gilbert, after qualifying, was asked how much the steers had gained from the time of purchasing them in September, 1908, until January,

5. SAME: best evidence.

1910, when sold. Objection as not calling for the best evidence was interposed, it having appeared that the animals were weighed by some one at the stockyards, both when bought and when sold, and a record thereof kept. The objection was rightly overruled. But for the cattle having been weighed the testimony was admissible. *Westphalen v. Railway,* 152 Iowa, 232; *Ft. Worth & D. C. Ry. v. Great House,* 82 Tex. 104 (17 S. W. 834). And no showing whatever was made which would have justified the admission of the record. *Cummings v. Insurance Co.,* 153 Iowa, 579.

Nor was there any proof that the scales had been properly balanced, or that the party weighing them had done so accurately. In other words, there was no showing that evidence of weights was of better quality than estimates of experienced stockmen, and there was no error in the court's ruling.

The record is without error, and the judgment is— *Affirmed.*