M. S. BATEHAM et al., Appellees, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY et al., Appellants.

**PLEADING:   Amendments—Continuance.**   Whether an amplifying
1   amendment justifies a continuance rests in the fair discretion of
    the court.

**CARRIERS:   Live Stock—Basis For Damages.**   Evidence of the shrink-
2   age of stock during shipment, in excess of the ordinary and un-
    avoidable shrinkage, together with evidence of the value per pound
    of the stock and the physical condition thereof, affords sufficient
    basis for a computation of the damages on the basis of the differ-
    ence in value of the stock as it was at the end of the shipment and
    the value as it would have been, had there been no negligence in
    transportation.

**CARRIERS:   Live Stock—Burden of Proof.**   A carrier may not com-
3   plain of instructions to the effect that, after the shipper had first
    borne the burden to establish a prima-facie case of negligence and
    resulting injury, the carrier must assume the burden of showing
    that care and skill on its part would not have prevented the injury.

**CARRIERS:   Live Stock—Reasonable Dispatch.**   The statutory duty
4   of a carrier to transport freight and live stock "with all reason-
    able dispatch" (Secs. 2116, 2157-s, Code Supp., 1913) is but a
    declaration of the common law.

**CARRIERS:** **Live Stock—Unlawful Confinement of Stock.** A request for the confinement of stock in interstate transit for a period in excess of 28 hours may not be validly inserted *in a bill of lading.*

**EVIDENCE:** **Presumptions—Continuity of Condition.** A showing that stock was in good condition some 10 hours before it was actually delivered to the carrier generates a presumption, in the absence of any other fact or circumstance to the contrary, that such stock was in good condition when so received by the carrier.

**CARRIERS:** **Live Stock—Presumption From Bad Condition.** Principle reaffirmed that, where stock is delivered to the carrier in good condition, and the shipper does not accompany the same, and the stock is found in bad condition at the point of destination, a prima-facie presumption of negligence is generated against the carrier.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

APRIL 3, 1923.

ACTION to recover damages on account of injury to stock in transit, claimed to have resulted from improper handling and delay in transportation. Verdict was for $500 in favor of plaintiff, and judgment was entered thereon. Defendant appeals.— *Affirmed.*

*Hughes, Sutherland & O'Brien* and *Brockett, Strauss & Blake,* for appellants.

*Casper Schenk,* for appellees.

ARTHUR, J.—The issues presented by the pleadings were:

(1)   That plaintiffs, through their agents, delivered to defendant company a carload of stock cattle and a carload of hogs in good condition for transportation.

(2)   That the cattle and hogs reached their destination in a damaged condition.

(3)   That there was an unreasonable delay in the transportation of said shipment.

(4)   That the defendant company negligently and carelessly transported said shipment.

To meet the claims of the petition, defendant company alleged in its answer: (1) Denial of negligence on its part; (2)

denial of delay in transportation; (3) that it was not the initial carrier; and that the shipment in question was received from the St. Paul Bridge & Terminal Company, of South St. Paul, Minnesota, a common carrier, at its terminal at Hoffman Avenue, St. Paul, Minnesota.

I. Appellees were joint owners of a farm near Granger, which, in October, 1919, was occupied by one Thomas Waldron, as tenant and agent of appellees. Waldron purchased for appellees, at the Union Stockyards in St. Paul, 132 hogs and 27 steers, and on October 11, 1919, at 6:45 P. M., 128 of the hogs and all of the steers were loaded at the Union Stockyards in the cars of the defendant company on the St. Paul Bridge & Terminal Company's tracks, and the cars containing the stock were received by the defendant railroad on its tracks at St. Paul at 10:45 the same evening. The defendant company does not connect directly with the Union Stockyards at St. Paul, Minnesota. The line that connects with the yards is the St. Paul Bridge & Terminal Company. It is four or five miles from the yards to the terminal of the defendant company at Hoffman Avenue in St. Paul.

Several errors are assigned, upon which appellant relies for reversal.

II. At the close of all the testimony, and after a motion by defendant company to direct a verdict in its favor had been submitted and overruled, the court permitted plaintiffs, over objection of defendant, to file an amendment to their petition, which alleged the following particulars of negligence:

(1) That the shipment was conveyed on slow trains, and slower than the regular trains scheduled between terminal points.

(2) That the shipment was mishandled between Mason City, Iowa, and Granger, Iowa; that the shipment was held nine hours between Madrid, Iowa, and Granger, Iowa, and hauled over that distance at the end of a long coal train.

(3) That defendant wrongfully permitted a feed trough to remain in the car with the hogs from Mason City to Granger, Iowa.

(4) That defendant confined said cattle and hogs in the cars for a longer period than 28 hours.

(5) That said shipment should have reached Granger on the morning of October 14, 1919, and that it did not arrive until the evening of October 16, 1919.

Appellants assign error in permitting the amendment above set forth and in not allowing a continuance asked, upon the refusal of the court to strike the amendment. The assign-

1. PLEADING: amendments: continuance.

ment is without merit. The amendment introduced no new issues into the case. The matters pleaded in the amendment were germane to the cause of action alleged in the original petition, and merely made more definite the former allegations of negligence. Permitting the amendment and refusing continuance of the case were within the discretion of the court, and we think there was no abuse of discretion. Code Sections 3600 and 3602.

III. The court instructed the jury that:

"You will allow plaintiffs, as damages, the difference, if any, between the reasonable, fair market value of said stock in

2. CARRIERS: live stock: basis for damages.

the condition it was in immediately after transportation, as shown by the evidence, and the fair and reasonable market value of said stock as it would have been had it been transported and delivered to plaintiffs without negligence."

Appellant complains that it was error to permit a recovery on the basis set forth in this instruction, for the reason claimed by appellant, that there was no evidence of any market value of the stock, and no evidence of how the market value of these animals was affected by the alleged negligence; and insists that the jury was allowed to determine the market value of the stock at Granger, without any evidence to guide them. Witnesses for plaintiff testified that the market price of cattle such as are involved in this case, on the Des Moines and Granger markets at the time in question, was 10 cents per pound, and the market value of hogs, 16 cents per pound. There was testimony that the normal shrinkage of such cattle in being transported from South St. Paul to Granger would be 25 to 30 pounds each; and that these cattle shrunk, in the estimation of the witnesses, from 85 to 120 pounds each. The testimony showed that the average normal shrinkage of hogs of this kind would be 6 to 10 pounds on each animal, and that the shrinkage on these hogs was from

20 to 35 pounds each.  Also, there was the testimony of Waldron and of J. E. Jackson, who was with Waldron when he bought the stock, as to the good condition of the stock at St. Paul.  Waldron and Jackson were present at the unloading of the stock at Granger, and testified to the bad condition of the stock then; that the cattle acted crazy, and some of them dragged their hind legs; that there wasn't enough fill in them; that their hair was dry; that they thought the cattle had fever; that the hogs looked hungry and gaunt, and were uneasy; that four of the hogs were crippled, and some of them dragged their hind feet.

We think the instruction was proper, under the evidence.

IV.  Appellant complains of error in giving Instructions 8 and 9, and that said instructions are conflicting.  In Instruction 8 the court told the jury that:

3. CARRIERS: live stock: burden of proof.  "If the animals were injured while they were being transported upon defendant's train, then the plaintiff has made out a prima-facie case, and the burden of proof will be upon defendant to prove that care and skill on his part would not have prevented the loss, or injury, or to show the circumstances which excuse or relieve him from liability."

The court said, in Instruction 9:

"The evidence discloses that certain of the hogs died, either in transit or after delivery to plaintiffs.  On this point you are instructed that the burden of proof is on the plaintiffs to show that said hogs did not die because of disease or natural infirmities."

The first complaint is that Instruction 8 was erroneous in that it does not place the burden of proving negligent delay on the plaintiffs.  The criticism of this instruction as to burden of proof is not warranted.  Instruction No. 1, given by the court, placed the burden of proof upon the plaintiffs, to show that defendant failed to deliver the stock at destination within a reasonable time.  The instruction properly placed the burden upon the carrier to prove that care and skill on its part would not have prevented the injury, after the plaintiffs had, in the first instance, borne the burden of proof, and made out a prima-facie case by showing unusual delay and other necessary matters

of negligence. We. observe no error in these instructions. *Carr
v. Chicago, R. I. & P. R. Co.*, 173 Iowa 444.

V. Appellant assigns error in Instruction 6. The com-
plaint is that said instruction placed upon the carrier a higher
degree of care than is required in an interstate shipment, such

4. CARRIERS:
live stock:
reasonable
dispatch.

as the one involved. Appellant insists that the
shipment, being an interstate shipment, is gov-
erned by the general law as to the degree of
care imposed upon the carrier, and not by the Iowa statute, Sec-
tion 2157-s, Code Supplement, 1913. Instruction 6 complained
of seems to have been formulated under the Iowa statute. The
court told the jury that:

"It is the duty of common carriers to move cars containing
live stock at the highest practicable speed consistent with rea-
sonable safety and the reasonable movement of its traffic, and
if * * * defendant failed in this particular, * * * then the fact
that defendant did so fail would constitute negligence, * * *
and defendant would be liable."

Appellant cites *Siemonsma v. Chicago, M. & St. P. R. Co.*,
137 Iowa 607, announcing the common-law and Federal rule, as
holding the most that this court has ever required with respect
to the duty of common carriers to move cars containing live
stock, wherein we said that:

"Where a railway company accepts live stock for shipment,
it becomes its duty to transport the same with all reasonable
dispatch to the point of destination."

Our holding in *Carr v. Chicago, R. I. & P. R. Co.*, supra,
answers the criticism of appellant, wherein we said that:

"It amounts to no more than a declaration of pre-existing
law. Such was the law in every common-law jurisdiction, be-
fore its enactment and since. In the absence of contrary legis-
lation, such would be the law if the statute were superseded or
repealed. There is nothing in the Federal act which contravenes
it. So far, therefore, as this feature is concerned, it matters
not if our statutes should be deemed superseded by the Federal
act."

See, also, cases cited in the *Carr* case.

VI. Appellant complains of Instruction No. 7, wherein
the court stated the statutory requirements of not confining

stock for a longer period than 28 consecutive hours without
unloading, unless the owner or person in cus-

5. CARRIERS:
live stock:
unlawful con-
finement of
stock.

tody of such stock extend the time to 36 hours,
etc. In presenting the issues, the court stated
the claim of plaintiffs that the carrier had vio-
lated the statute as to confinement of stock, and also stated
that the defendant denied negligence in that regard; and in
Instruction No. 7, the court submitted such issue to the jury.
Appellant claims that it was error to submit such question to
the jury, because the evidence showed without dispute that there
was a 36-hour request given by plaintiffs. The statute, after
laying down the 28-hour rule, recites that:

"Provided, that upon the written request of the owner or
person in custody of that particular shipment, which written
request shall be separate and apart from any printed bill of
lading, or other railroad form, the time of confinement may be
extended to thirty-six hours." Barnes' Federal Code, Section
8295.

The proof offered by appellant to show waiver of the 28-
hour confinement of the stock and request for 36-hour confine-
ment was recitations in the bill of lading of the hogs and the
bill of lading of the cattle, wherein it was recited that a 36-hour
request had been "signed and filed at the point of origin."
Plaintiffs objected, and moved to strike the exhibits, the bills
of lading, but they were allowed to remain in the record. Mani-
festly, the testimony offered was not competent to prove the
written request for extension of time of confinement of the
stock to 36 hours. The attempt so to prove extension of time
for unloading was in direct violation of the statute. We think
that appellant cannot complain of prejudice on account of the
submission of this issue to the jury. If the court had excluded
the evidence offered to show a 36-hour extension, as should have
been the ruling, plaintiffs, under the evidence, were entitled to
a peremptory instruction stating that the carrier had violated
the statute.

VII. Error is assigned as to Instruction No. 8, which told
the jury that:

"If the animals were injured while they were being trans-

ported upon defendant's train, then the plaintiffs have made
out a prima-facie case, and the burden of proof
will be upon the defendant to prove that care
and skill on its part would not have * * * re-
lieyed it from liability.''

6. EVIDENCE: presumptions: continuity of condition.

The particular objections to the instruction are that there
was no evidence of the condition of the stock, when delivered
to the carrier; that, specific grounds of negligence being alleged,
the plaintiffs must carry the burden of proving the same; and
that the instruction erroneously cast the burden on the carrier
of proving that there was no negligence on its part. The peti-
tion alleged that the stock was in good condition when delivered
to the carrier, and evidence was introduced in support of such
allegation. Waldron testified:

''I last saw the hogs at South St. Paul, about a quarter to
nine on Saturday morning.''

The stock was loaded on Saturday at 6:45 P. M., so that
less than nine hours intervened after Waldron viewed the cattle
before they were loaded, and an hour longer as to the hogs.
Waldron further testified that the hogs ''looked good, and acted
like they were ready for their feed, and to go right along. I
looked them over carefully. As to the cattle, I took particular
care that there were no lame, lump-jawed, or cripples. I drove
them all in a ring, and had each one ahead of me, and then told
them to bring them back. That gave a good view in case of
lump-jawed or crippled or anything else. The cattle had a nice
feed in them; looked plump and good.''

Also, J. E. Jackson, a farmer and stock raiser, who was
with Waldron at St. Paul and saw the stock, testified that the
hogs looked thrifty, and the cattle looked very good.

There is no serious dispute in the evidence that the stock
was in bad condition when it was delivered at destination. Be-
fore the hogs were loaded, they were vaccinated, and were
dipped in a compound solution of creosol. Four of the hogs
which had been purchased for shipment were rejected as not
being fit to ship. It was the claim of appellant on the trial
that whatever injury was suffered by the hogs was from the
effects of the vaccination and dipping, and that, on account of
such vaccination and dipping, the hogs were not in good condi-

tion when they were loaded.  Appellant called a veterinary surgeon, who testified as to the effects of vaccination, and stated that the loss from shipment after vaccination and dipping would be from 1 to 5 per cent, under favorable conditions.  Appellant urges that the vaccination and dipping were a probable cause of the death of some of the hogs and the injury to others.  The condition of the stock when delivered to the carrier, and whether or not they were injured during transportation, were questions of fact, for the jury to determine.  The jury might have found, and evidently did find, that the stock was delivered to the carrier in good condition.  Appellant makes the contention that the testimony of Waldron and Jackson was as to the condition of the stock some considerable time before the stock was loaded at South St. Paul, and some time longer before the stock reached the Milwaukee road, and that there is no showing of the condition of the stock at the exact time it was delivered to defendant road.  It is true that some 9 or 10 hours passed after Waldron and Jackson viewed the stock before it reached defendant carrier; but, on the theory of continuity, we think the stock may be presumed to have remained in the same condition until some change or cause for change was shown; and the record does not disclose change in the condition of the stock when it was unloaded, fed, watered, and rested at Mason City, something more than 20 hours later.  *Powers v. Chicago, R. I..& P. R. Co.,* 130 Iowa 615.

Respecting Instruction No. 8, appellant also urges that appellees base their case upon negligence specially pleaded; that the instruction was wrong in stating that a prima-facie case was made out by showing that the animals were injured while in transit; and that, upon such showing, the burden was cast upon the defendant to prove that care and skill on its part would not have relieved it from liability.  Appellant's position is that appellees, having alleged negligence and particulars of negligence, should have been confined in their proof to such alleged specific breaches of duty, and that it was error to permit appellees to show breach of contract for safe transportation.  Appellant's position is not tenable under our holdings.  *Gilbert Bros. v. Chicago, R. I. & P. R. Co.,* 156 Iowa 440;

7. CARRIERS:
   live stock:
   presumption
   from bad
   condition.

*Swiney v. American Exp. Co.,* 144 Iowa 342; *Ruebel Bros. v. American Exp. Co.,* 190 Iowa 600. The stock was not accompanied by the owners or anyone representing them. In *Ruebel Bros. v. American Exp. Co.,* supra, we said:

"Beyond doubt, it is the law that, where stock is delivered to the carrier in good condition, and the shipper does not accompany same, and the stock is found in bad condition when it reaches its destination, this proves *prima facie* a cause of action, and, if not met, authorizes a recovery by plaintiff. *Gilbert Bros. v. Chicago, R. I. & P. R. Co.,* 156 Iowa 440; *McCoy v. K. & D. M. R. Co.,* 44 Iowa 424; *Chapin v. Chicago, M. & St. P. R. Co.,* 79 Iowa 582, 585. When this prima-facie showing is met, the burden shifts, and it is for the defendant to show that the injury was due to inherent vice or propensities of the animal shipped. *Boehl v. Chicago, M. & St. P. R. Co.,* 44 Minn. 191 (46 N. W. 333); *Illinois Central R. Co. v. Word,* 149 Ky. 229 (147 S. W. 949). This rule rests on the doctrine that, where the shipper does not accompany the shipment, the defendant alone has knowledge, and therefore the duty of using that knowledge in disproof of the prima-facie case made. The rule rests also upon the doctrine that agreements of exemption on account of vice and the like create an exception from liability, a special contract, without which the carrier would be liable as an insurer; and that, if it wishes to save itself by urging the contract exception, it must, therefore, by proof bring itself within the exception."

VIII. Appellant urges that the evidence produced by appellees was not sufficient to warrant submission to the jury of the question of negligence because of delay. We think that appellant's contention in this respect is not tenable, under the record. According to evidence produced by appellant, the stock was in transit between Mason City and Granger 15 hours longer than the train schedule. There was conflict in the testimony as to when the shipment arrived at its destination, Granger. According to appellant's testimony, the shipment arrived at Granger at 7 P. M. on October 15th. Appellees' testimony fixed the time of the arrival of the shipment at Granger on the evening of October 16th.

On a careful examination of the record, we conclude that

the verdict had sufficient support in the evidence. We find no reversible error. Accordingly, the judgment of the trial court is—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.