L. F. MOSTELLER v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

**Carriers:** INJURY TO LIVESTOCK: NEGLIGENCE: BURDEN OF PROOF. Where a shipper receives live stock for transportation then in good condition, and is charged with the exclusive care and control of the same, proof of its bad condition at the point of destination raises a presumption of negligence in its transportation, which the carrier must overcome to avoid liability therefor. But where the shipper or his agent accompanies the stock, and in consideration for his transportation undertakes to load, unload, feed and care for the same, he must not only show its damaged condition at the point of destination, but also that the injury was not the result of his negligence, but that of the carrier. Where, however, the shipper shows that the injury was not the result of his negligence, delivery of the stock in a damaged condition at the point of destination raises the presumption of negligence on the part of the carrier; but the burden continues upon the shipper throughout to establish the negligence of the carrier.

*Appeal from Hancock District Court.*—HON. C. H. KELLY, Judge.

MONDAY, DECEMBER 18, 1911.

ACTION for damages to horses shipped over the defendant's line of railway resulted in judgment as prayed. The defendant appeals.—*Reversed*.

*Geo. W. Seevers, W. H. Bremner* and *J. E. Wichman,* for appellant.

*C. R. Wood* and *Senneff & Bliss,* for appellee.

LADD, J.—The plaintiff loaded a car with household goods, machinery, a coop of chickens, and eight horses at Hoopeston, Ill., and billed them over the Lake Erie & Western Railroad Company's line to Peoria, Ill., and from there to Corwith, Iowa, over the defendant's line. The horses are alleged in the petition to have been injured to the extent of from $50 to $150 each by delays in the course of transportation over defendant's road, hard handling of the car, refusal to unload, or to afford facilities to feed and water. Chauncy Moore accompanied the stock by virtue of the shipping contract, which provided: That the said shipper is at his own sole risk and expense to load and take care of and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same; and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same.

The evidence in plaintiff's behalf tended to show that the horses were damaged by the rough handling of the car, failure to properly care for them en route in the matter of feeding and watering and unloading, and that this was due to the refusal of the defendant's employees to furnish proper facilities and opportunity to feed, water, and unload; and there was evidence in behalf of defendant to the contrary. The only exceptions argued are to three of the instructions. Those to the fifth and tenth of these, with respect to limiting the amount of recovery for injury to each horse to that claimed, will be obviated on another trial, which the exception to the ninth instruction will render necessary. Therein the court directed the jury

that: "If you find, from the weight or preponderance of the evidence introduced upon the trial that, at the time said horses were delivered to the Iowa Central Railway Company at Peoria, Ill., said horses were in good condition, and you further find, from the weight or preponderance of the evidence introduced upon the trial, at the time they reached Corwith, Iowa, they were in a damaged condition, then it is incumbent upon the defendant to prove that such damaged condition was not in fact caused by the defendant."

The evidence was conclusive that the horses were in a damaged condition when delivered at Corwith, and the jury was told in the eighth instruction that, in order to recover, it must appear that this was not the result of any negligence on the part of those accompanying the stock. There was no instruction to the effect that the burden of proof was on plaintiff to show that injuries due to any omission in the matter of feeding or watering, loading or unloading, were because of negligence of defendant, and the purport of the instruction quoted, in the light of the evidence, was directly to the contrary. But for the circumstance that Moore and Blakely accompanied the car, the instruction quoted, in so far as it indicated that from delivery by the shipper in good condition and delivery by the carrier at the destination in bad condition negligence of the latter was to be inferred, and, unless met, would justify recovery by the shipper, finds support in *Swiney v. Express Co.,* 144 Iowa, 342.

This is on the theory that, as the stock, having been delivered in good condition, is presumed so to continue until the contrary appears, *Powers v. Railway,* 130 Iowa, 615, if in bad condition upon reaching its destination, this, as it has been in the exclusive control of the carrier, is presumed to have resulted from some negligence on its part. In other words, from a showing of having been delivered to the carrier in good condition and received by

the shipper at its destination in bad condition, the inference arises that the company has been negligent in the performance of its duties as a common carrier in the transportation of the stock.

But where the owner, or someone acting for him, accompanies the stock, and, in consideration of being carried, undertakes to load, unload, feed, and water the stock, such an inference is not tenable, for the injury as well may have resulted from the carelessness of the owner or his agent, as from the negligence of the carrier's employees. For this reason, the courts quite generally require that the shipper who accompanies his live stock himself, or has his employees do so, prove affirmatively that injury thereto during transportation was not consequent of anything the shipper or his agent undertook to do or did in the care of his stock, and, if injured in any such respect, that this was owing to some fault of the carrier in neglecting to afford facilities for such care. Thus, in *Grieve v. Railway*, 104 Iowa, 659, the owner accompanied his stock, and it was said:

As a general rule, injury to property transported being shown, the burden is cast upon the carrier to exculpate itself from blame. This is because of its exclusive control of the property, and of the instrumentalities of transportation, and of its superior means of information. But is this true where the shipper assumes to and actually does take charge of his stock during its transportation? In such a case, the animals are not in the exclusive custody of the carrier, nor are its means of information superior to those of the shipper, who is in a position to know what has been done or omitted, as well, if not better, than the carrier. Now, the cattle were kept in the cars, without unloading, or feeding, or watering, in Chicago, for about nine hours, and the injury, if any, was occasioned thereby. All this, however, the plaintiff had assumed to do, and, if his failure therein was caused by any act of the defendant, he knew what it was as well as the company. If he demanded facilities for unloading the cattle, or for feeding

and watering them, and these were not provided, or were refused, then the burden was cast upon the defendant to excuse itself for not furnishing them. But the burden is certainly on the shipper in the first instance, to show that the injury did not result from his own negligence, and if occasioned by failure to do what he has undertaken, then that such failure resulted from an omission on the part of the company to perform some duty devolving upon it.

In that case the complaint was that the cattle and hogs had been confined in the car without proper attention longer than they should have been, and, as the shipper had undertaken to unload, feed, and water them, and had accompanied the stock for that purpose, the inquiry related to the very things he was to do. The natural inference then was that the injury was due to his own fault, and not that of the company. If he was prevented from bestowing the care he had undertaken to give them by some agency over which he had no control, he was aware of that quite as well, if not better, than the company's employees. To cast on him the burden of proving the negligence of the carrier, then, in the matters the shipper had assumed and was there to do, as in failing or refusing, on request or information of the need, to afford facilities for loading, or unloading, feeding, or watering, was but the reasonable and logical course to pursue, and this involved, not only a showing of the shipper's want of negligence, but of the carrier's negligence.

In *Burgher v. Railway,* 105 Iowa, 335, the action was for damages resulting from the failure of the person accompanying the stock to do what, by the terms of the shipping contract, he had undertaken, and, as these were not due to any fault of the carrier, the court held that the railroad company was not liable for resulting damages.

In *McManus v. Railway,* 138 Iowa, 150, though the shipper accompanied the stock, the trial court charged, as in the case at bar that the burden of proof was upon de-

fendant to show that it was not liable for damages thereto. Though the loss or injuries complained of were not all such as pertained to the matters the shipper had undertaken, it was said the burden of proof was upon plaintiff, and recovery was denied, for that damages were not affirmatively proven.

In *Colsch v. Railway,* 149 Iowa, 176, the *McManus* case, in extending the doctrine of the *Grieve* case so as to cast on the shipper who accompanies his live stock in transportation the burden of proving the negligence of the carrier, even though this may have been in no way connected with what the shipper had done or undertaken to do, was followed, and opinions so deciding quoted with approval. That action, as this, was to recover damages consequent of the carrier's negligence, and logically, as is pointed out in 4 Elliott on Railroads, section 1548-a, there is much reason for the conclusion of many courts in holding the burden to be on plaintiff to prove the allegations of negligence contained in his petition. This requires no more to make out a *prima facie* case than the inference to be drawn from a showing that the live stock was in good condition when delivered to the carrier, and was in bad condition, not evidently due to natural propensities or ordinary climatic conditions, upon arrival at its destination. And the shipper who accompanies his stock may, in order to make out a case, be compelled to resort to a showing of this kind. Ordinarily, in accompanying it, he will be quite as well aware of the way it is handled in the operation of the train, in switching, and the like, as the employees of the company; but he is not required at his peril to stand guard over the employees of the carrier that, in event of injury, he may be able to establish their carelessness by his own testimony, but may assume that they will observe their legal obligation by bestowing on the property proper care, and, if they fail so to do, rely on circumstantial evidence, as that the stock suffered injury

in the meantime, not necessarily attributable to their natural propensities or climatic conditions. His cattle or other live stock, being in good condition when last seen by him, are presumed to so continue with proper handling, until the contrary is shown; and if it is made to appear on the trial that the shipper, in accompanying the stock, has done what he undertook, and that the stock was not injured in connection with anything he was to do or did, and yet were in bad condition upon reaching its destination, the inference arises that this was the result of negligence on the part of the carrier. In other words, the carrier, in such a case, is not relieved from meeting the inference that the injury was the result of some neglect on its part precisely as though the shipper had not accompanied the stock. The shipper undertakes to see to his stock only in a limited way. The carrier continues in control of all the instrumentalities of transportation. With these it is familiar, and there is precisely the same reason for inferring its negligence in transporting the live stock upon a showing that the same, though injured in transit, was not injured in connection with what the shipper undertook to do or did, as though he had not accompanied the stock at all. But the mere fact that the circumstances shown by the shipper, as plaintiff, are such as to make out a *prima facie* case which, unless met by evidence on the part of the carrier, as defendant, will warrant a finding that the latter has been negligent, in consequence of which the former has suffered damages, will not shift the burden of proof. Such burden, as was held in the *Colsch* case, continues on plaintiff, who bases his claim for damages on the alleged negligence of the carrier in transporting his live stock, precisely as in other actions sounding in tort.

Because of the error in the instructions, the judgment is *reversed.*