JOE NUGENT, Appellant, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellee.

CARRIERS: Loss or Injury—Burden to Show Human Agency. Receipt by a carrier of live stock in good condition, followed by the death of the stock prior to arrival at point of delivery, creates a presumption of negligence on the part of the carrier *only* in those cases where the conditions attending the dead stock indicate injury *by human agency.* In the absence of such indications, the shipper must negative death by natural causes.

*Appeal from Polk District Court.*—W. H. McHenry, Judge

MARCH 5, 1918.

REHEARING DENIED JUNE 24, 1918.

ACTION for the value of a horse which died during transportation, resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals.—*Affirmed.*

*S. G. Van Auken,* for appellant.

*James C. Davis, George E. Hise,* and *Henry L. Adams,* for appellee.

LADD, J.—A carload of horses, including that in controversy, reached Webster City from Marathon, over the defendant's line of railroad, at about 7 o'clock in the morning of October 31, 1915. An employee of Leonard & Carson's directed the unloading of the horses and placed them in that company's yards. This particular horse, with 5 or 6 others, occupied one of the pens until it, with 19 others, was loaded on defendant's car at about 1 o'clock A. M. of November 2d following. In the meantime, the horses in this pen were fed twice a day, from an open trough, with hay, and 25 or 30 ears of corn raised in 1914; and the evidence tended to show that the horses were in good condition when loaded. The horses were unaccompanied by the shipper. Upon reaching Des Moines, at about 9 o'clock in the morning of the same day, the horse particularly referred to was lying dead in the car, without any mark, scratch, or scar on its body, "except right on his forehead, there was a cut of about three inches." Whether there was such a cut even was in dispute; but no one expressed the opinion that such cut may have been the cause of death, nor do counsel for either party so claim. Some of the witnesses qualified to speak on the subject were of the opinion that death was from flatulent colic, while others testified that the cause of death could not have been ascertained by such an examination as was made, and that this was possible only by an autopsy, which was not had. The evidence of the conductor and brakemen tended to show that the train was carefully handled. Appellant relied on the rule, well established in this

state, that from proof that live stock is delivered to the
carrier in good condition, and is found in bad condition
on arrival at its destination, a prima-facie case of negligence
is made out, which the carrier must overcome, in order to
relieve itself from liability. *Mosteller v. Iowa Cent. R. Co.*,
153 Iowa 390; *Swiney v. American Exp. Co.*, 144 Iowa 342;
*Gilbert Bros. v. Chicago, R. I. & P. R. Co.*, 156 Iowa 440.
Ordinarily, the "bad condition" in which live stock has been
delivered is manifestly due to some human agency, though
this is often put in issue. As is said in 6 Cyc. 524:

"Inasmuch as the carrier is not liable for death of ani-
mals during transportation due to natural causes, or their
inherent vice or natural disposition, mere proof that the
animals died after delivery to the carrier and before the end
of transportation is not sufficient to establish liability; but
the evidence must further show that the loss was due to
human agency. But if the loss or bad condition appears to
have been due to human agency, then the carrier must show
that it did not result from his negligence, in order to escape
liability on the ground that it was due only to delay, or from
causes within the common-law exemption, or within a valid
particular limitation."

The law is similarly stated in 3 Elliott on Evidence, Sec.
1919; *Gilbert Bros. v. Chicago, R. I. & P. R. Co.*, supra;
*Schaeffer v. Philadelphia & R. R. Co.*, 168 Pa. St. 209 (47
Am. St. 884).

Nothing in the record indicated that the death of this
horse might have been attributed to rough handling, or to
any want of care on the part of defendant's employees. The
evidence affirmatively showed, without dispute, that there
were no marks, scratches, or scars on the body, save the cut
in the skin over the forehead. Its condition was more con-
sistent with death from disease or natural causes than be-
cause of violence consequent upon any want of care in its
transportation. In other words, death from disease or nat-

ural cause was conclusively shown to have been more probable than from some human agency in its transportation. *Pennsylvania R. Co. v. Raiordon,* 119 Pa. St. 577 (4 Am. St. 670) ; *Illinois Cent. R. Co. v. Word,* 149 Ky. 229 (147 S. W. 949). Even if not more probable, the cause of death was mere matter of conjecture, save as light may have been thrown on the subject by the experts as to whether the cause was colic; and it would have been mere matter of speculation by the jury.

There was no error in directing the verdict for defendant, and judgment thereon is—*Affirmed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.