LON ALEXANDER, Appellee, v. AMERICAN RAILWAY EXPRESS
COMPANY, Appellant.

CARRIERS:   Carriage of Live Stock—Prima-Facie Neglect.   Prima-
1   facie liability against a common carrier for negligence is shown
by testimony (1) that an animal of a stated value was examined
by a veterinarian and found to be in good health, (2) that, shortly
thereafter, the animal, still apparently in good health, was prop-
erly crated and delivered to the carrier for shipment, (3) that the
animal was never delivered at the point of destination, (4) that
no caretaker accompanied the animal, after delivery to the carrier.
Quite strong counter evidence as to the condition of the animal re-
viewed, and held insufficient *per se* to overcome such prima-facie
showing.

CARRIERS:   Carriage of Live Stock—Rule of Liability.   The carrier
2   is liable for all loss or injury to animals transported by it not occa-

sioned by or due to some act or fault on the part of the owner, and not due to some cause inherent in the animal.

CARRIERS: Carriage of Live Stock—Regulations for Lower Rate for 3    Lower Liability. The alleged right of a carrier to make regula-
tions by the terms of which it could, in consideration of a lower rate for a lower liability, by contract provide that the shipper must prove that the loss was caused by the negligence of the carrier, becomes wholly immaterial in a case where the shipment in ques-tion was valued at its full value, and where the rate paid was in accordance with such full value.

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

MAY 15, 1923.

ON February 15, 1921, one Melburg delivered to the de-fendant a thoroughbred Poland China sow, for transportation from Norway, Iowa, to Arlington, Texas. A shipping contract was entered into, and the value of the animal was therein stated to be $300. The sow died while *en route* between Ames and Des Moines. The jury returned a verdict for the plaintiff, and the defendant appeals.—*Affirmed.*

*Carl F. Jordan,* for appellant.

*Frank C. Byers* and *George C. Gorman,* for appellee.

FAVILLE, J.—The appellee alleged and offered evidence to prove that the sow in question was delivered to the appellant properly crated and in good condition. Appellee's evidence disclosed that, shortly before the animal was delivered to the appellant, it was examined by a veterinary surgeon, who found it to be in good health. The value of the animal was established at $300. The appellee proved these facts, and that the animal was not delivered by the appellant to the consignee, and rested his case. Appellant moved for a directed verdict at the close of appellee's testimony, which motion was renewed at the close of all of the testimony. The motion was overruled. The hog was delivered to the appellant about fifteen or twenty minutes before train time. At that time, the animal was quiet, and was standing in the crate, which was placed in the car by three

men.  The hog weighed between five and six hundred pounds, and was two years old.  The crate was about three or four inches longer than the hog, and the top was four or five inches above the hog, and there was a three-inch space on each side.  The crate was made of pine slats.  The express agent testified that there was nothing unusual in reference to the conduct of the hog until after the train left Norway.  Soon thereafter, however, the animal began to be disturbed, and to bite and tear the slats of the crate.  According to his testimony, the hog was near the side of the door, with its head within a foot and a half of the door, and the express messenger lifted one end of the crate and turned it around, so that the damaged portion was against the wall of the car.  He noticed that the sow pushed against the back of the crate, and was chewing and biting the slats at the end of the crate.  The animal continued to act this way until the train arrived at Ames, where there was a forty-minute stop.  At that time, the animal had apparently quieted down, and when the train arrived at Des Moines, the hog was dead.  The messenger did not know when it died.  The following day, the carcass was returned to Ames, where it was turned over to a professor of veterinary pathology at the Iowa State College, who made a post-mortem examination.  He found that the front of the crate was considerably splintered and broken, and had apparently been chewed by the hog.  There were bloodstains about the animal's mouth.  The straw in the crate beneath the animal's head was bloodstained.  The veterinarian discovered eleven pigs in the uterus.  There was a pig on each side, or "horn," of the uterus nearest the opening, that was about one third the size of the other pigs, and was in a soft and macerated condition.  In the opinion of the doctor, these pigs had been dead for a month, or possibly more.  There was pus in the uterus.  The other pigs had not been dead any longer than the hog itself, in his opinion.  The entire genital tract was somewhat decomposed.  Below the hog's tail, five or six inches, were two muscles that were torn loose from their attachments.  A small portion of the right side of the pelvis had been fractured, and, in the opinion of the veterinarian, this occurred before the animal died.  A vertebra at about the middle of the animal's back was fractured transversely.  It was the opinion of the veterinarian that this

break occurred after death. He testified that it was very difficult to diagnose the cause of the animal's death, but that, in his opinion, the condition which he found in the uterus might have caused the death, and that there were no external injuries that could have entirely explained the death.

I.   Appellant's chief and main contention is that the court should have sustained the appellant's motion for directed verdict at the close of the appellee's testimony, which motion was re-newed at the close of all of the testimony, on

1. CARRIERS: car-
riage of live
stock: prima-
facie neglect.

the ground that the appellee did not make a prima-facie case of negligence by proving that the animal was delivered to the appellant prop-erly crated and in apparently healthy condition, and that it was not delivered to the consignee. Appellant contends that this showing was not sufficient to make a prima-facie case, but that the appellee was required to go further, and prove that the death of the hog resulted from some act of human agency for which the appellant was responsible.

The appellant cites and relies upon the opinion in the case of *Doty v. Wells Fargo & Co. Express,* 188 N. W. 37. The opin-ion so reported has been withdrawn. 193 N. W. 28.

The rule is well established in this state that, where a plain-tiff alleges and proves that live stock is delivered to a carrier in good condition and is found in bad condition on its arrival at destination, or fails to arrive, a prima-facie case of negligence is made out, which the carrier must overcome, in order to relieve itself from liability, where no caretaker accompanies the stock. *McCoy v. K. & D. M. R. Co.,* 44 Iowa 424; *Swiney v. American Exp. Co.,* 144 Iowa 342; *Colsch v. Chicago, M. & St. P. R. Co.,* 149 Iowa 176; *Mosteller v. Iowa Cent. R. Co.,* 153 Iowa 390; *Gilbert Bros. v. Chicago, R. I. & P. R. Co.,* 156 Iowa 440; *Ruebel Bros. v. American Exp. Co.,* 190 Iowa 600; *Buck v. American R. Exp. Co.,* 195 Iowa 1024.

This is the rule recognized generally. See *American R. Exp. Co. v. Dunnaway,* 17 Ala. App. 649 (88 So. 60); *Bates v. American R. Exp. Co.,* (S. D.) 187 N. W. 634; *Arkansas Cent. R. Co. v. McCuen,* (Ark.) 234 S. W. 617; *Louisville & N. R. Co. v. Hunter,* 185 Ky. 165 (214 S. W. 914).

The appellee in this action sought to do no more than to

establish a prima-facie case, by alleging and proving the delivery of the animal to the carrier, properly crated and in a sound and healthy condition, and that the carrier failed to transport and deliver the animal to the consignee.   Appellee also proved that there was no caretaker accompanying the animal, and proved its value, and thereupon rested.   This made out a prima-facie case for the appellee.   In this case, as in the *Ruebel* case, supra, the appellee, in both his allegations and proof, limited himself to stating such a prima-facie case. · No specific mishandling or negligence was alleged, nor was there any allegation that the injury was caused in any specific way.   Appellee contented himself with stating and proving no more than the initial delivery in sound condition, and nondelivery to the consignee, with proof of value.   Upon the making of such prima-facie showing, the burden rested upon the appellant to show that the death of the hog was caused without negligence on its part, as, for example, by the act of God, or by the public enemy, or from the disposition, nature, vices, or propensities of the animal.   *Ruebel Bros. v. American Exp. Co.,* supra; *Buck v. American R. Exp. Co.,* supra.

The court did not· err in overruling the appellant's motion for a directed verdict on the ground that the appellee had failed to make out a prima-facie case.

II.   The appellant's contention is that the animal died from natural causes, and that the conditions which brought about the death existed, although unknown to the appellant, at the time the animal was delivered to appellant for shipment.   It is the contention of the appellant that the death of the animal resulted from a condition which, according to its testimony, might have existed for a month or more, this being an infection resulting from the diseased pigs in the uterus of the sow and the decomposed condition of the uterus and the pus therein.   This presented a fact question for the determination of the jury.

Appellee's contention is that the animal was delivered to the appellant in a healthy condition, and he offered testimony of the shipper of the animal and also of the veterinarian who examined it before the shipment, tending to show that the animal was at said time in a sound and healthy condition.   The evidence of the appellant in regard to the animal's condition, as disclosed

by the post-mortem examination, was properly admissible for the purpose of rebutting appellee's claim that the animal was in a sound and healthy condition when delivered to appellant, and also for the purpose of sustaining appellant's claim that the animal died from natural causes, for which the appellant could not be held liable. Under the record, this testimony presented a fact question for the determination of the jury, and with its conclusions we cannot interfere.

III.    By Section 6 of the contract of shipment, it is provided that the appellant "shall not be liable for the conduct or acts of the animals to themselves, or to each other, such as biting, kicking, goring, or smothering, nor for loss or damage arising from the condition of the animals themselves, or which results from their nature or propensities, which risks are assumed by the shipper."

2. CARRIERS: carriage of live stock: rule of liability.

The court instructed the jury to the effect "that, regardless of any contractional exceptions, the carrier is liable for all loss or injury not occasioned by or due to some act or fault of the owner, or not due to some cause inherent in the animal." The contract is identical with the one considered by us in *Ruebel Bros. v. American Exp. Co.*, supra, and the instruction given was to the same effect as the instruction in the *Ruebel* case. There was no error at this point.

IV.    Appellant contends that, the shipment in question being an interstate shipment, under the terms of the Carmack Amendment and the Cummins Amendment to the Interstate Commerce Act, the appellant had a right to make regulations by the terms of which, in consideration of a lower rate for a lower liability, it could be provided by contract that the shipper must prove that the loss was caused by the negligence of the carrier. The rule contended for could, under no circumstances, even if recognized, have any application to the facts of this case, for the reason that there was no contract for a lower liability in consideration of a lower rate of shipment. The animal was valued at its full market value, and the rate provided for was the full rate charged for the shipment at such value.

3. CARRIERS: carriage of live stock: regulations for lower rate for lower liability.

V. It is contended that the evidence conclusively establishes that the cause of the death of the animal was its condition at the time it was delivered to the appellant, and that death resulted from natural causes. The evidence tends to show that, if the animal was diseased, as claimed by the appellant, at the time it was delivered to the shipper, its confinement in the crate and the excitement attending the shipment would cause it to be feverish, and that its conduct might have been due to such a cause. On the other hand, there is evidence to show that the animal was, to all appearances, in good health at the time of its delivery to the appellant. It was examined by a veterinarian, shortly before such time, and found to be in good health; its temperature was then taken; and if it had been diseased to the extent claimed by the appellant, the evidence shows that this would probably have been disclosed by the temperature, and also by a vaginal discharge, and it would have been listless and lying around; and there was evidence tending to show that none of such conditions existed. It is obvious that this conflicting evidence presented a fact question for the determination of the jury as to the condition of the animal at the time it was delivered to the appellant, and this question was properly submitted to the jury by the instructions of the court.

Furthermore, the express messenger testified that he moved the animal from the side door of the car toward the rear by lifting up one end of the crate and swinging it around. There was a small break in one of the rear hip bones of the animal, and the muscles around such bone were torn loose. There was blood in the crate, especially around the head and neck of the animal, and a bloody discharge from the mouth. One vertebra was fractured, and the evidence is not conclusive as to whether this occurred before or after the death of the animal.

The record presented a question for the determination of the jury as to the cause of the death of the animal. The finding of the jury having support in the evidence, the same cannot be interfered with by us.

VI. The instructions of the court are complained of; but, when they are read in their entirety, we find no error therein prejudicial to appellant.

The cause must be, and it is,—*Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.