A. F. McCOY, Appellee, v. WABASH RAILWAY COMPANY, Appellant.

No. 40332.

JUNE 23, 1930.

REHEARING DENIED SEPTEMBER 26, 1930.

*Johnson & Teter,* for appellant.

*Johnston & Shinn,* for appellee.

KINDIG, J.—The plaintiff-appellee is a farmer and stock raiser, residing near Runnells, Iowa, who, on June 16, 1925, delivered to the defendant-appellant 135 head of hogs for shipment

from Runnells to the National Stock Yards, Illinois. These hogs were loaded into two cars. 67 head of the hogs, weighing 17,390 pounds, were placed in one car, and the remaining 68 head of the hogs, weighing 15,040 pounds, were loaded into the other car. It appears that the rated capacity of each car was 16,500 pounds.

At the time of loading the hogs, appellee placed in each car 7 or 8 bushels "of ear corn, and a little slack." This fact will later become material in discussing the issues. Apparently the heavier hogs weighed approximately 250 pounds each. Those animals were placed in a car by themselves, and it seems that they were supplied with a little more corn than that given to the smaller hogs in the other car. When the cars arrived at the National Stock Yards, Illinois, the smaller animals were in good condition, but 26 of the larger hogs were dead. Said dead animals weighed 6,400 pounds, and therefore, if appellee's loss is figured at $13 per hundredweight, the price basis for which similar live hogs were then and there valued, the result is $832. From this amount is to be deducted $64 salvage received for the dead animals. Thus the net damage to appellee was $768. This amount, plus interest, was allowed by the jury. Claims for shrinkage and extra feed were not submitted to the fact-finding body by the district court.

In his petition, the appellee stated appellant's status as a common carrier, and that the hogs aforesaid were delivered to and received by it as such, and that, although the live stock was in good condition when thus delivered, 26 of the animals, as aforesaid, were dead upon arrival at their destination. Continuing, the appellee pleaded that the loss in no way was due to his negligence, but the same was caused by the appellant's carelessness in that: First, the animals were not watered, although the weather was very warm; second, the shipment was not made with reasonable dispatch; and third, cold water was thrown upon the hogs when they were warm. By way of answer to appellee's petition, the appellant set forth: First, a general denial; second, a statement of its care and dispatch in making the shipment; and third, that the loss was due to appellee's own negligence in overloading the car and overfeeding the stock.

When submitting these issues to the jury, the district court

stated that the burden of proof was upon the appellee in the first instance ''to establish by the preponderance of the evidence * * * that, at the time he loaded the hogs in question in the car for shipment and delivered them to the [appellant] for transportation, that said hogs were in good condition, and that, when they were delivered at the point of destination, 26 head of said hogs were found dead in the car in which they were shipped; and that said deaths * * * were not caused by any inherent disease or ailment of said hogs, and also that their deaths were not caused by any act of negligence on the part of [appellee], or of any other party who was at the time acting for the [appellee], either in the delivering of said hogs at the station at Runnells, Iowa, or in the bedding of the car in which they were shipped, or in the supplying of corn or food for the use of said hogs * * * or on account of any overloading of said car, if said car was in fact overloaded, or unduly crowded.''

Then the district court further told the jury that, if they found ''from the preponderance of the evidence all of said matters in favor of the [appellee], then and in that event, the proof will have established a prima-facie case of damages against the [appellant], and in such event, the burden of proof will be upon the [appellant] to show by the preponderance of the evidence that the death of said hogs was not due to any act or omission on the part of the [appellant] or of its agents or employees during the time same were in the custody of the [appellant] for transportation from Runnells, Iowa, to the point of destination.''

Furthermore, the district court stated to the jury:

''It will be a question of fact for the determination of the jury, under the evidence and under the law as given you by the court in these instructions, what caused the death of the hogs in question that were found dead in the car when they arrived at their destination, and whether said hogs came to their deaths by any act or failure to act on the part of any human being, and if so, whether such failure was due to negligence on the part of the [appellee] or due to negligence on the part of the [appellant], or its employees, after same were loaded in the car.''

To this instruction the appellant excepts. Generally speaking, appellant's objection thereto may be divided into two parts: First, that the appellee in his petition stated three definite and

distinct grounds of negligence, and therefore it was error for the court to allow him to recover on general negligence; and second, that there is no evidence in the record to sustain the fact that appellant was in any way negligent in the premises, but that it does appear appellee's loss grew out of his own carelessness. For convenience, these propositions will be considered in the order named.

I. Should appellee's right to recover have been limited to the special grounds of negligence named in the petition? Appellee did allege in his petition that the appellant was negligent in three respects; but, in addition thereto, appellee also set forth facts indicating the relationship between him and appellant as that of shipper and carrier, and that the hogs were delivered to and accepted by the appellant in that capacity. Does the added subject-matter become material in a discussion of the controversy? Manifestly, under our decisions, it does.

Liability for loss of the kind here involved may arise from a contract or a tort. Both principles may be relied upon as the basis for recovery, at least unless the claimant is required to elect his remedy. *Swiney v. American Express Co.*, 144 Iowa 342; *Moore v. Chicago, R. I. & P. R. Co.*, 151 Iowa 353; *Gilbert Bros. v. Chicago, R. I. & P. R. Co.*, 156 Iowa 440. See, also, *Turkington v. Chicago, R. I. & P. R. Co.*, 196 Iowa 304. A few quotations from the foregoing authorities will elucidate. During the discussion in *Swiney v. American Exp. Co.* (144 Iowa 342), supra (local citation 344, 345), it is said:

"The position taken by counsel seems to involve the thought that, to sustain a recovery in cases of this character, the shipper is bound to support his claim by an affirmative showing of negligence in the carrier. This we think is not the rule which has heretofore been recognized and applied by this court, and is opposed to the prevailing doctrine approved by the courts of this country in general. [Page 349] * * * As we have already said, the carrier's liability does not turn upon the mere question of *negligence*." (The italics are ours.)

Suggestion is then made by this court that actions of this kind are based upon contracts, as well as upon negligence, and if the record is sufficient for recovery upon the former basis, the latter need not be proven. Likewise, it was declared in *Gilbert*

*Bros. v. Chicago, R. I. & P. R. Co.* (156 Iowa 440), supra, reading on page 443:

"The proposition is not that the evidence excepted to might not have been admissible and the instruction correct under a different pleading, but that the petition had narrowed the issue to a single ground: i.e., injury of the cattle by the rough handling of the car at Blue Island. The defect in this proposition is that it overlooks the distinction, as does appellant's argument, between this class of cases, involving the liability of a common carrier in the transportation of property, and those bottomed primarily on want of care. In the latter, the rule prevails that the injured party, having selected his ground for recovery, must stand or fall thereon, as appears from *Volquardsen v. Telephone Co.*, 148 Iowa 77, and other like decisions. But actions against a common carrier for injury or loss of property during transportation are not *primarily founded on the negligence of the carrier*. [The italics are ours.] Thus it has been held that a petition reciting that property, when delivered to a common carrier, was in good condition, and when received by the shipper at its destination, in bad condition, without specific allegations of negligence, and in the absence of any more definite general allegation of negligence, stated a cause of action. * * * As said, an action for damages in the carriage of live stock is not necessarily bottomed on tort. Recovery may be had on a breach of contract. [Page 449] * * * Other decisions of this court are to the same effect, notably *Swiney v. Express Co.*, 144 Iowa 342, and *Mosteller v. Railway*, 153 Iowa 390, in the first of which the pleading required, and in the last the extent of proof exacted, are somewhat fully discussed. Enough has been quoted and said to indicate that, whether the action is for breach of contract to safely carry, or is based on breach of a public duty to do the same thing, the presumptions arising from proof are the same, as are also the rules with reference to the burden of proof. Indeed, little seems to remain of the distinction between actions *ex delicto* and *ex contractu* against common carriers. The issue of care exercised by the carrier arises only when the case is sought to be brought within some of the excepted perils [acts of God and of public enemy, etc.]. Plainly enough, the proof was sufficient to make out a breach of the contract to safely carry,

and, as no more was essential to entitle the plaintiff to the relief asked, it is manifest that there was no error in the instruction given, nor in receiving evidence of the conditions in which carried. *In other words, the allegation of negligence may be treated as surplusage."* (Italics are ours.)

There is a clear distinction between the elements necessary to recover against a common carrier for damage to goods or live stock conveyed by it under a contract, on the one hand, and the prerequisites, on the other, for redress in ordinary negligence cases. The rule is well established in this state that, if the foundation for recovery in a case is negligence, and specific items of neglect are alleged, general negligence cannot be relied upon, and proof must be made of the definite charges set forth. *Volquardsen v. Iowa Tel. Co.*, 148 Iowa 77; *Stone v. Chicago, R. I. & P. R. Co.*, 149 Iowa 240; *Kelly v. Muscatine, B. & S. R. Co.*, 195 Iowa 17; *Whitmore v. Herrick*, 205 Iowa 621; *Orr v. Des Moines Elec. Light Co.*, 207 Iowa 1149.

Distinction between the two lines of thought appears because in the one the contract element is present, and in the other it is absent. That thought is clearly expressed in *Swiney v. American Exp. Co.* (144 Iowa 342), supra, and *Gilbert Bros. v. Chicago, R. I. & P. R. Co.* (156 Iowa 440), supra. Reconciliation of the two theories is fully made in the *Gilbert Bros.* case on pages 443 and 444. Therefore, the element of contract creating the relationship between the common carrier and the shipper being involved in the case at bar, the instruction given by the district court was correct, so far as the complaint made is concerned. Hence, appellee was entitled to recover under his contract, regardless of the negligence alleged. We do not now suggest or decide that in any event a plaintiff in a case of this kind may be required to elect whether he will seek recovery on tort or contract.

For substantiation of its proposition that the appellee, having pleaded special acts of negligence, must rely thereon, appellant cites *Stone v. Chicago, R. I. & P. R. Co.*, 149 Iowa 240, and *Volquardsen v. Iowa Tel. Co.* (148 Iowa 77), supra. Each case, however, is determined on the theory of negligence alone. So, as before related, a distinction appears between those cases and the

one under discussion. In *Stone v. Chicago, R. I. & P. R. Co.* (149 Iowa 240), supra, this court expressly said that the "sole ground of recovery alleged in plaintiff's petition was * * * negligence * * *." No consideration was given in that case to the contract doctrine.

Under the record here presented, however, the contract relationship appeared in appellee's petition, and during the trial the contract itself was introduced in evidence by appellee. Wherefore, consistency requires that we apply to this case the principle announced in *Gilbert Bros. v. Chicago, R. I. & P. R. Co.* (156 Iowa 440), supra, and similar cases, wherein the claimant was allowed to recover on the basis of contract, and permitted to ignore his allegations concerning the tort.

Thus it is obvious that the district court committed no error in the foregoing respect, when submitting the cause to the jury under said instructions, provided that the necessary elements of proof were present to sustain the same.

II. Next in order of discussion is appellant's claim that, because of its own care shown, and the negligence of the appellee appearing, the record entirely absolved it from liability, and therefore no jury question was presented. Such is the proposition now to be considered.

Reliance is made by appellee at this juncture upon the proposition that he delivered the hogs in good condition to the carrier, and that they arrived at their destination dead. The death, appellee asserts, resulted from overheating. Consequently, appellee concludes, the record discloses the loss was due to human agency, and hence it was incumbent upon appellant to show that its duty in the premises was fully performed. This is the general rule when neither the shipper nor his representative or agent accompanied the animals during the transportation by the carrier. *Nugent v. Chicago & N. W. R. Co.*, 183 Iowa 1073; *Mosteller v. Iowa Cent. R. Co.*, 153 Iowa 390; *Swiney v. American Exp. Co.* (144 Iowa 342), supra; *Gilbert Bros. v. Chicago, R. I. & P. R. Co.* (156 Iowa 440), supra; *Moore v. Chicago, R. I. & P. R. Co.* (151 Iowa 353), supra; *Powers v. Chicago, R. I. & P. R. Co.*, 130 Iowa 615.

The more serious question here is whether the human agency element appears as the cause of death, rather than ordinary

disease and the natural propensity of the animals. Appellee and his witnesses testified that, at the time of delivery to appellant, the hogs were "in good condition," and in the "pink of condition." Disease was not apparent among the herd. Sick hogs had not been on appellee's farm for more than a year. There was no apparent ailment present in the hogs now being considered. It does not appear that these animals were exposed to contagious or infectious disease. They had been "on full feed for 90 days." When the stock was delivered to the carrier, they were cool and quiet. Water had been given them.

"When the healthy condition of an animal is once shown, there is a general presumption that such condition continues until the contrary is shown." *Powers v. Chicago, R. I. & P. R. Co.* (130 Iowa 615), supra.

After being loaded, the hogs remained in the car from the forenoon of June 16th until the afternoon of June 17th. While the 16th of June, the day of shipment, was cloudy, yet the following day was very hot. Thus it was essential, under the theory of the trial, that the hogs be properly watered and sprayed. There were no cuts, bruises, or scars on the dead hogs. Although the car contained the 26 dead hogs aforesaid, yet the live animals therein with them were in good health; for they sold on June 18th at the top market. Thereby some evidence is furnished, indicating the absence of sickness or disease in the herd. Under the record, then, the circumstances were such that the jury, aided by the presumption of the continued good health aforesaid, would be warranted, if it were so inclined, in finding that the hogs died from being overheated. Obviously, fat hogs are liable to be overheated in warm weather. That is a well known fact. Because thereof, under the theory of the trial, the duty was imposed upon appellant to properly give such hogs, being transported during the hot weather, sufficient water to drink, and for cooling purposes. Appellant in effect concedes that said obligation is thus imposed upon it. If properly watered and sprayed, generally the hogs will survive the transportation through the heat. Under the record, it appears that without the water they will be more likely to perish. Injury to the hogs, therefore, may arise through a human agency, not only in af-

firmatively harming the animals, but also in refusing or neglecting to properly water them.

Twenty-six of the hogs in one car died, as before stated. Witnesses for the carrier indicated that this was an unusual circumstance. Some substantial evidence, therefore, appears upon which the jury could find that the loss was due to some human agency. Either the appellee or the appellant was at fault. Each blames the other. Clearly, under the evidence and the instructions, it was for the jury to say which one, and the burden of showing lack of blame at this point is upon the appellant. Suggestion is made by the appellant that the damages arose because the appellee overloaded the car, and placed therein too much corn. Both overloading and overfeeding, appellant declares, will cause the hogs to overheat. Explanation is made by the appellee that, while the car was loaded above its rated capacity, yet he especially observed that the hogs were not crowded, and that there was plenty of room therein for them. Furthermore, appellee stated that he is an experienced and frequent shipper, and always, on previous occasions, similarly had loaded and prepared the cars. The controversy thereby presented was necessarily one for the jury to determine.

Evidence appears, indicating that the appellant frequently sprayed the hogs, and in so doing used a fan-shaped apparatus, in such a method as to put the water in the bottom of the car, rather than over the top of the hogs. This appears to be desirable for the reason that overheated hogs may die when cold water is suddenly thrown upon them from the top. One witness, a commission man at the stockyards, declared that the car containing the dead hogs had been very recently watered, while the other car, wherein there were no dead animals, was dry. From this basis appellee argues that the appellant must have thrown cold water over the overheated hogs, thus causing the death of the 26 before mentioned. Whether this conclusion is warranted, we do not now decide, but are constrained to hold there was sufficient evidence upon which the jury could find that the appellant has not met its burden of proof concerning the performance of its duty in giving the hogs sufficient water to drink. Much is said in the record about appellant's spraying the hogs and placing water in the car to cool them. As to whether the appellant sufficiently and properly sprayed the hogs, it was for the jury

to decide. *Ruebel Bros. v. American Exp. Co.*, 190 Iowa 600 (local citation 610). Also, an additional question arises for appellant to answer. It is whether the animals were given sufficient water for their use in the hot weather. Doubt arises concerning the amount of water actually given the hogs for drinking purposes. Considerable evidence appears concerning appellant's spraying the cars, but little and uncertain testimony is presented regarding the drinking water for the hogs. Overheating, resulting in the deaths before named, may have been caused by neglect in furnishing sufficient drinking water. So the jury were justified, under the evidence and Theory 8 of the trial, in finding that the appellant had not shown the full performance of its duty and freedom from negligence.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, DE GRAFF, WAGNER, and GRIMM, JJ., concur.