E. L. VANDER BEEK, Appellee, v. CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.

No. 44106.

1364

MARCH 8, 1938.

OPINION ON REHEARING JUNE 20, 1939.

REHEARING DENIED SEPTEMBER 22, 1939.

Henry F. Wagner and Davis, McLaughlin & Hise, for appellant.

Thomas J. Bray, for appellee.

RICHARDS, J.—The petitions of the parties for rehearing having been granted the original opinion of March 8, 1938, published in 278 N. W. 201 is withdrawn and therefor this opinion is substituted.

The salient allegations of plaintiff's petition were these; that defendant is and at all times mentioned was a corporation engaged in the business of transporting property as a common carrier; that on June 16, 1934, at Wright, Iowa, plaintiff delivered to defendant for transportation and shipment to Coburn, Nebraska a purebred Percheron stallion owned by plaintiff, that was of the value of $800; that defendant accepted the stallion for such transportation and shipment, but failed to transport it to said destination; that by reason of defendant's failure to transport and deliver the stallion as aforesaid plaintiff has been damaged in the sum of $800, no part of which has been paid; that plaintiff was not guilty of any negligence that contributed to the loss of the stallion and the resulting damages; judgment for $800 with interest and costs was demanded.

In its answer defendant admitted being a common carrier of property by railroad and that it received at the time and place stated in the petition a horse for transportation to Coburn, Nebraska.. As to whether or not the horse was the property of plaintiff, or was of the type, character, and breed described in the petition, there was a denial in the answer of knowledge or information on defendant's part sufficient to form a belief and strict proof thereof was demanded. The answer also contained a denial that any amount was owing to plaintiff. All else contained in the answer was set out in a separate division which stated;

"3. For further defense, the defendant alleges that the said horse so received by it at Wright, Iowa, on the 16th day of June, 1934, died enroute, which death of said horse was not the result of or in any manner caused by any negligence or want of care on the part of this defendant and was not caused by or the result of the transportation of said horse by this defendant, but said death of said horse was due to natural causes and was the direct and proximate result of the inherent weaknesses and natural propensities of the animal."

In a reply plaintiff denied all affirmative allegations contained in the answer. Upon these pleadings the case was tried, resulting in a verdict and judgment in favor of plaintiff. Defendant has appealed.

At the outset of the trial plaintiff proceeded to the offering of evidence in her behalf. She introduced the bill of lading and

identified the stallion as the horse defendant received for transportation. Certain witnesses testified that plaintiff owned the stallion, that it was a purebred Percheron, that its value was in excess of $800, and that it was never delivered by defendant. The testimony of these witnesses stood uncontroverted at the close of the evidence. Plaintiff's witnesses further testified that when received by defendant the stallion was in sound and healthy condition.

When thus there were admissions in the answer or evidence in the record that either established or tended to prove the ownership in plaintiff and the value of the stallion, its delivery to and acceptance for transportation by defendant a common carrier by railroad, the then sound and healthy condition of the animal, and defendant's failure to deliver same (nonpayment of the alleged damages having been conceded), plaintiff rested her case in chief.

Thereupon defendant introduced evidence in its behalf, calling witnesses who testified; that the stallion was loaded loose in a box car, without other animals therein, on June 16, 1934, at 7 a. m.; that the car moved from Wright at 8 a. m.; that at Belle Plaine it was transferred to another freight train and moved to Boone, where it arrived on June 17 at 1:15 a. m.; that about 15 minutes thereafter defendant's patrolman discovered that the stallion was dead, cold, and stiff, lying in the car; that a veterinarian called by defendant made a post-mortem examination at 10 a. m. on June 17; that according to his testimony he found a guttie, or twisted bowel, the affected part being the small intestine, and found a rupture of the small intestine anterior to the guttie; that he also found that the mesentary connection that holds the bowels was torn loose, and that the bowels were twisted up in a place about a foot long; that in the opinion of this veterinary the probable cause of the death of the horse was a twist in the small intestine; that in his opinion the twist, or guttie, and the ruptured intestine, were caused by indigestion. Other experts who had not observed the stallion but assumed facts contained in hypothetical questions testified that in their opinions the stallion died from an intestinal twist produced by indigestion. Defendant then rested. Plaintiff in rebuttal offered expert opinion evidence that was quite the opposite of the opinions expressed by defendant's experts. In the testimony of the experts was such conflict that therefrom the jury

could have found that a guttie in a horse results from various causes such as indigestion, jumping, straining, falling suddenly, jars and sudden stopping. There was testimony from which a jury could have found that the causes of a rupture of the small intestine are violence, a bump, a concussion, a sudden throwing down of the horse, as well as distension by reason of a guttie. The expert testimony was in dispute also as to whether or not a guttie was the probable cause of the death of the stallion.

At the close of all the evidence defendant moved for a directed verdict. The motion was overruled. The first assignment of error is a complaint lodged against this ruling. Defendant says that the error consisted of the refusal to direct a verdict in its favor, under a record that (1) shows, by special finding of the jury, that the stallion died of an inherent propensity or weakness, and (2) is devoid of any evidence tending to show that defendant, by any negligence on its part, contributed to the death of the animal.

Upon casual reading this assignment of error might appear to have substance. For if the death of the animal had been due to a natural cause as defendant asserted in its answer, and if on the trial defendant's evidence had established that fact as a matter of law, in the manner sickness of animals from a natural cause was shown in Siegel v. Chicago, R. I. & P. Ry. Co., 201 Iowa 712, 208 N. W. 78, then of course the ruling on the motion should have been based on the premise that the loss was from a cause against which defendant was not an insurer. In that state of the record defendant might well contend that a recovery, if any, would be dependent on a further factual issue respecting the exercise or non-exercise of the diligence owed by defendant to avoid or minimize the loss even though it was from an excepted cause. Mitchell v. U. S. Express Co., 46 Iowa 214. But this concept of law is not supported in the instant case by the same fact situation that we have assumed in the foregoing. That the stallion died a natural death had not been shown as a matter of law. In the evidence was a conflict, even if the special finding mentioned in the assignment should be given consideration. Defendant's own statement in argument is that, viewed in the light most favorable to plaintiff, the evidence as to the cause of the death was in equipoise. It was not a situation where it appeared, as a matter of law, that an excepted cause had brought about the loss, relieving the defendant,

unless it further appeared that defendant had not exercised the diligence it owed to protect the property from loss from that cause.

Nevertheless defendant urges that it was entitled to a directed verdict. It states that the naked fact that an animal died in transit might not relieve the carrier from liability. But, says defendant, when such death appears, with no evidence that the death was due to human agency, recovery against the carrier will not be permitted. Claiming there was no evidence that a human agency caused the death of the stallion defendant's conclusion is that a verdict should have been directed. In advancing this proposition defendant relies particularly on Gilbert Bros. v. Chicago, R. I. & P. Ry. Co., 156 Iowa 440, 136 N. W. 911, and Nugent v. Chicago & N. W. Ry. Co., 183 Iowa 1073, 166 N. W. 592, each case involving a railroad carrier's liability when the shipment was of livestock.

In the Gilbert case evidence was adduced that cattle were in good condition when delivered to defendant, and were bruised and severely injured when they reached their destination. Also, over objection, evidence was received that the car was not bedded. The two propositions the defendant relied on for reversal were (1) that the evidence was insufficient to make out a prima facie case, and (2) that the court erred in admitting plaintiff's evidence that the car was not bedded. With respect to the latter proposition the defendant's point was that the evidence that the car was not bedded was not relevant because, the petition having alleged specific negligence in the handling of the car at Blue Island, there was no other issue to be determined. Thereto this court did not agree, the reason being that the petition stated a complete cause of action ex contractu. No evidence was introduced concerning the handling of the car at Blue Island. But the judgment was affirmed, the holding being that plaintiff had made out a prima facie cause of action ex contractu, and that the court rightly submitted the case to the jury even though it sounded in tort, and the further holding was that the trial court did not err in receiving as a part of plaintiff's evidence in chief the testimony with respect to the car not being bedded, although this evidence "might have been deferred until defendant had undertaken to meet such prima facie case by showing circumstances which might relieve it from liability." [156 Iowa 452, 136 N. W. 916.] One would hesitate

to affirm that there was presented in the Gilbert case the contention made by defendant in the instant case, i. e., that in an action ex contractu the shipper's cause of action fails unless he shows that the death of an animal in transit was due to human agency. For in the Gilbert case the element of human agency was not lacking, there being testimony that defendant had carried the cattle without bedding in the car. It is also to be noted, from what we have quoted from the opinion that it would seem to have been the court's opinion that this evidence as to the car not being bedded, was not one of the elements of plaintiff's ex contractu cause of action, but that after defendant had shown an excepted cause it would have been an apt time to show the car was not bedded. Obviously the then materiality of the showing would have been upon the question whether due care had not been exercised to avoid loss from the excepted cause, whereby negligence had become a contributing proximate cause of the loss.

However, in the course of the discussion in the Gilbert case there was quoted in the opinion at considerable length the text found in 6 Cyc., pages 376, 381, 519 and 513 (seemingly pages 376, 381, 521 and 524 were those intended to be mentioned). Defendant points out that in the quotation from page 524 is a statement to the effect that proof that animals died after delivery to the carrier and before the end of the transportation is not sufficient to establish liability, but the evidence must further show that the loss was due to human agency. The doubtfulness that the proposition contained in this statement was looked upon as determinative of the issues before the court in the Gilbert case has been mentioned. There is another consideration, pointing towards a probability that the court did not, by quoting the statement, definitely adopt it as the law in this jurisdiction. That consideration is this—not the common law liability of carriers but a liability for negligence is the liability with which the statement has to do. In the Pennsylvania and Missouri cases cited in 6 Cyc. 524 in support of the statement, the pronouncements are of the law that obtains in jurisdictions in which the common carriers may contractually limit their liability to that ensuing from their own negligence. The practical result is that in those jurisdictions negligence (in some states looked upon as a failure to exercise the highest degree of care), is that which the shipper must declare upon

1370

and prove. And in such jurisdiction the courts seem to hold that, without evidence of any machinations of a human agency, there is nothing to support the claim, or a presumption to bolster the claim, that someone has been negligent. We can see how the same holding could be advocated, and upon the same reasoning, in an action brought in Iowa, if the action were founded solely upon negligence, to the exclusion of recovery ex contractu, without reliance upon the carrier's common law liability that obtains in this state. But unlike Pennsylvania and Missouri, it has long been statutory in Iowa that no contract exempts a railroad corporation from the liability of a common carrier which would exist had no contract been made. Section 8042, Code 1935. And unlike the states mentioned, in this jurisdiction a plaintiff who does not accompany the shipment, as in the instant case, is not bound to support his action, brought ex contractu, by an affirmative showing of negligence in the carrier. Swiney v. American Express Co., 144 Iowa 342, 115 N. W. 212, 122 N. W. 957; Ruebel Bros. v. American Express Co., 190 Iowa 600, 180 N. W. 658. It would be quite in contravention of this well established rule to hold that such a plaintiff must show that a human agency caused the loss, for the establishment of negligence in the carrier would be the only purpose or materiality of the showing. It is doubtful whether it can be said we ever definitely so held. But so far as our prior opinions may have an appearance of so holding they are now overruled, and our conclusion in the instant case is that defendant was not entitled to a directed verdict on its theory that it was fatal to plaintiff's recovery that she did not show that the death of the stallion was due to human agency. In arriving at this result we have not overlooked Hussey v. Saragossa, 3 Woods (U. S.) 380, 12 Fed. Cas. page 1066, No. 6949, also cited at 6 Cyc. 524. In that case the libel was predicated on negligence. The discussion of human agency appears as dictum. There was no application of the rule to the case. The dismissal was based on something else—the fact that it appeared from the weight of the evidence that the horse died from natural causes.

In Nugent v. Chicago & N. W. R. Co., 183 Iowa 1073, 1075, 166 N. W. 592, 593, the Gilbert case was cited and again the statement from 6 Cyc. 524 was quoted. The question was whether the trial court had erred in directing a verdict for the defendant. We held there was no error. Had it been the

thought of the court that it was the statement in 6 Cyc. 524 that compelled the district court to direct the verdict, it would have sufficed to have so said. That such was not the thought of the court seems to further appear from two features of the opinion, i. e., (1) the court speaks of a rule, as being well established in this state, "that from proof that livestock is delivered to the carrier in good condition, and is found in bad condition on arrival at its destination, a prima-facie case of negligence is made out, which the carrier must overcome, in order to relieve itself from liability," and (2) the court appears to have approved the directing of the verdict by reason of the weight it accorded to and conclusions it drew from the testimony that was in the record relative to a natural cause having brought about the death. But if it be otherwise, a re-quoting in the Nugent case of the statement, without consideration of the cases that are its authority, or of its soundness as law in this jurisdiction, seems to present nothing that has not already been discussed. In McCoy v. Wabash R. Co., 210 Iowa 1075, 231 N. W. 353, the plaintiff as well as the defendant having injected human agency into their theories of the case, there was no occasion for giving consideration to the merits of the doctrine. It may be further said that in what has been stated is intended no inference concerning plaintiff's claim that there was evidence of the condition of the car upon arrival at Boone from which a jury could have found that a human agency caused the death of the stallion. This claim has not been taken into consideration.

Another assignment challenges the second instruction given the jury. Therein the court stated what facts and matters plaintiff was under the burden of proving by a preponderance of the evidence in order to make out a cause of action, and further charged the jury that if they should find in favor of plaintiff on all such facts and matters, from a preponderence of the evidence, in that event the proof will have established a prima facie case of damages against defendant. Continuing, the instruction said "and in such event the burden of proof will be upon the defendant company to show by a preponderance of the evidence that the failure of the defendant company to transport said stallion to said destination was not due to *any act or omission* upon the part of the Railway Company, or of its agents or employees, during the time the said stallion was in the custody of the defendant company for transportation to Coburn, Nebras-

1372

ka. If you find by a preponderance of the evidence that the failure of the defendant Railway company to safely transport said stallion to said destination was on account of its death enroute and that its said death enroute, if it did die enroute, was from natural causes and was the result of inherent weaknesses and natural propensities of said animal, then your verdict must be for the defendant.''

 Defendant's complaint is of the use of the words ''any act or omission'' (italicized above), the claim being that the court erred in that these words should have been ''any *negligent* act or omission.'' Defendant urges that the instruction cast upon it a greater burden than the law contemplates. It is pointed out by defendant that, under the instruction, to exculpate itself, it was required to show that the failure to transport the horse to the destination was not due to any act or omission of defendant while the horse was in its custody, (defendant not pointing out that under the instruction this would be accomplished by showing that the horse died from a natural cause). This was requiring too much says defendant, for the reason that the full extent of the duty cast on defendant, in order to exculpate itself, after the jury had found that its common law liability had been established by plaintiff, was to show that it (defendant) had not been negligent. The difficulty is that in its proposition defendant assumes that the common law liability of defendant, established by plaintiff, turned upon the simple question of negligence, as in case defendant had been an ordinary bailee. The liability was in fact that of an insurer, against all risks incident to the transportation, save such losses as might result from the act of God or some other excepted cause. Defendant pleaded and relied on an excepted cause as its affirmative defense. The instruction charged the jury that if such cause appeared from a preponderance of the evidence the verdict must be for defendant. We are unable to see that defendant was entitled to more. The issue was not one of negligence though negligence may have merged therein, but of failure to perform what was a mixture of contract and duty, to wit: to deliver safely what had been received. Coad v. Penn. Ry. Co., 187 Iowa 1025, 175 N. W. 344; Bank of Irwin v. Am. Exp. Co., 127 Iowa 1, 102 N. W. 107. ''Whether the condition of the animal * * * at the end of the route was such as to lead a reasonable man to believe that such condition was due to any act of the defend-

ant was in no manner determinative of plaintiff's right.'' Swiney v. Am. Exp. Co., 144 Iowa 342, 115 N. W. 212, 215, 122 N. W. 957. A point could have been reached in the trial where negligence would come into the case as a proper issue, that is in event plaintiff had contended that, though the excepted cause might appear, yet the loss therefrom would have been avoided by exercise of due care by defendant. But in the earlier phase of the trial, where the common law liability had been imposed, escape lay in establishing an excepted cause of the loss. The question of negligence had not yet become an issue. We think that in connection with other instructions, clearly explaining the nature of defendant's common law liability, the second instruction fairly advised the jury upon the law that obtained upon the issues that were in this case.

■ Another objection is that the second instruction casts the burden of proof upon defendant to establish its affirmative defense. The complaint is that the court erred in using the term burden of proof because the burden of proof did not shift, but rather it was only the duty of going forward with the evidence that shifted to defendant to show that the loss of the animal was due to an excepted cause. We need not discuss the point because in any event no prejudice to defendant appears. The court clearly defined those matters and facts as to which the burden of proof was on plaintiff, and in substance charged the jury that, upon plaintiff having successfully carried this burden, then the burden of proof would be on defendant to show by a preponderance of the evidence the excepted cause. We are convinced that the last mentioned use of the phrase did not, in the minds of the jury, minimize or detract from what had been said to them concerning the extent of the burden of proof resting on plaintiff, that had been so clearly stated. We find no prejudicial error in the second instruction upon either of defendant's complaints pertaining thereto.

Other assignments of error, relating to refusal to give requested instructions find answer in what has been stated. Instruction 9 is criticized but we find therein no prejudicial error. The judgment from which the appeal is taken is affirmed.— Affirmed.

MITCHELL, C. J., and SAGER, OLIVER, MILLER, BLISS, HALE, and STIGER, JJ., concur.