CHARLES R. MOUNTAIN, Appellant, v. LEWIS ALBAUGH, Appellee.

No. 44973.

MARCH 12, 1940.

E. S. Tesdell and Wm. N. Plymat, for appellant.

Hallagan, Fountain, Stewart & Cless, for appellee.

MITCHELL, J.—Charles R. Mountain, the plaintiff in this cause, lives on a farm at the edge of Des Moines. He was engaged in the breeding of Guernsey cattle for 28 years, showing cattle at various state fairs and national dairy shows. He wished

to ship several of his cattle to Cedar Rapids to exhibit at the "All Iowa Dairy Show". He noticed an advertisement of the Albaugh Truck Company in the Des Moines Register and telephoned Mr. Albaugh. He entered into an oral agreement with Lewis Albaugh to transport certain of his cattle to Cedar Rapids and return for the sum of $60. On the morning of September 14, 1936, he delivered to Mr. Albaugh for shipment to the Cedar Rapids show eight head of cattle, including two bull calves, and a 4-year-old cow named "Iowanola Fascination". The cattle were loaded at about 9 o'clock in the morning, an employee of the plaintiff assisting in loading. They arrived at Ankeny, Iowa, a small town about 14 miles from the farm at 11 a. m. Mr. Leo Sturgeon, who was to exhibit the cattle for Mr. Mountain at the Cedar Rapids show, got on the truck, and was with the truck until it arrived at Cedar Rapids at about 8 o'clock that evening. He assisted in unloading them and put them in a shed or barn described as an "old race horse stable". It was not until 11 o'clock that evening, when the employee of Mr. Mountain noticed that the udder of "Iowanola Fascination" was inflamed and seemed to be injured. The next morning one of the bull calves was passing blood and was hardly able to walk. A veterinarian was called and treatment provided for the cow. After the show was over the cattle were transported back to the farm near Des Moines by the defendant. Plaintiff paid the defendant the $60 agreed upon. Upon the return to the farm the calf recovered and was later sold, but "Iowanola Fascination" got steadily worse and died on the 28th of September.

This action was commenced at law alleging that Lewis Albaugh was a common carrier and that he had entered into a contract to transport the cattle for him. That the cattle had been injured and that the damage amounted to $1,767.50, for which amount judgment was asked. There was a trial at which evidence was offered and at the close of plaintiff's evidence a motion to direct a verdict in favor of the defendant was sustained, the plaintiff has appealed.

Many questions are raised, including the question of whether or not Lewis Albaugh was a common carrier, however, we do not find it necessary to pass upon this question. No negligence is pleaded nor is there any proof of same.

This court has very recently passed upon the liability of a common carrier, in an opinion written by Justice Richards, in the case of Vander Beek v. Chicago and N. W. Ry. Co., 226 Iowa 1363, 286 N. W. 452.

This record shows that the cattle were loaded on the truck at about 9 o'clock in the morning, that at that time, they were in good condition. That "Iowanola Fascination" was a very wonderful cow, that the lineage of this cow could be traced back to the Island of Guernsey, where these cattle originated. That she was worth somewhere in the neighborhood of $1,000. That when the cattle reached Ankeny at about 11 a. m., the man who was to show these cattle at the Cedar Rapids show for Mr. Mountain got on the truck, and remained with them until they were unloaded. It is claimed by appellant that this man was not to commence work until the cattle arrived at Cedar Rapids, that he was not the agent or representative of Mr. Mountain. We do not find it necessary to pass upon this question. When the cattle arrived at Cedar Rapids at about 8 o'clock in the evening, they were unloaded, and this representative of the appellant assisted in unloading them, and placing them in the shed or barn, which apparently was not a very fit place to keep show cattle. There is no evidence of any injury at the time the cattle were unloaded.

This court was confronted with a very similar question in the case of Stone v. Chicago R. I. & P. Railway Co., 149 Iowa 240, 242, 128 N. W. 354, 355, which was a case where the shipper did not accompany the stock, but several hours after their arrival and unloading in St. Louis, Missouri, they were found to be injured. In this connection this court said:

"Now, the only evidence that these horses reached their destination in bad condition, if there was any such evidence, must be found in the testimony of the plaintiff and Hawkens that the horses were in bad condition when they were examined in the barn of the McFarlane Commission Company. It is conceded that the horses must have been unloaded from the car in which they were shipped into the yards of a stockyards company, and taken by some one from those yards to the stable where they were examined, distant about a quarter of a mile from the stockyards. * * *

"There was no evidence that, when the horses were un-

loaded from the car in which they were transported into the yards of the stockyards company, they were in bad condition, and, while the nature of the injuries to the horses was such as to make such injuries consistent with the receipt of such injuries in a defective car, it was also consistent with negligence and mistreatment at the hands of the stockyards company or during the transfer from the stockyards to the barn. Proof of the condition of the horses in the barn at a place a quarter of a mile removed from the place of delivery by the railroad company, and at a time which may have been at least several hours subsequent to such delivery, would not give rise to any presumption that, at the time the horses were unloaded from the car, they were in such damaged condition. No authority is cited for entertaining the presumption that, when the horses were unloaded from the car, they were in the condition in which they were subsequently found; it appearing that in the meantime they would necessarily be handled by persons for whose negligence and misconduct the defendant was in no way liable, and that their bad condition was as reasonably attributable to such misconduct or negligence as to the alleged negligence of the railroad company in transporting the horses in a car which was defective. * * *

"It seems to us there was no evidence whatever connecting the condition of the horses when they were examined in the barn with the negligence of the railroad company in transporting them in a defective car, and the motion of the defendant to direct a verdict in its favor for lack of sufficient evidence should have been sustained."

In the case at bar there is no evidence that the cattle were in bad condition at the time they were unloaded, and it must be kept in mind that the representative or agent of the appellant was present and assisted in the unloading. It was not until about 3 hours later that the injury to "Iowanola Fascination" was discovered and not until the next morning that the injuries to the calf were discovered. The record shows that the trouble that "Iowanola Fascination" was suffering from could have occurred in many ways, and that often cows have inflamed udders or caked udders, shortly after they become fresh, and that this cow had been fresh about 2 weeks. To have submitted this case to the jury would have permitted that body

to speculate upon whether the injuries were received during the transportation or after the animal had arrived and was unloaded. The lower court was right in directing the verdict. A motion to dismiss was submitted with the case, and same is hereby overruled.—Affirmed.

HALE, BLISS, OLIVER, MILLER, and SAGER, JJ., concur.

RICHARDS, J., dissents.